## Jo-Anne Guiel v. Allstate Insurance Company

[756 A.2d 777]

No. 99-046

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed April 28, 2000

*Geoffrey W. Crawford* of *O'Neill Crawford & Green*, Burlington, for Plaintiff-Appellee.

*Charles Platto* and *Eric D. Jones* of *Brooks McNally Platto & Vitt*, Norwich, for Defendant-Appellant.

**Amestoy, C.J.** In response to the parties' cross-motions for summary judgment in this declaratory judgment action, the superior court ruled that plaintiff Jo-Anne Guiel, who had obtained a settlement in a prior lawsuit seeking damages for injuries she sustained in an automobile accident, was entitled to deduct a proportionate share of the attorney's fees she incurred in the prior lawsuit from her insurer's subrogation interest in the settlement. On appeal, her insurer, defendant Allstate Insurance Company, contends that it

should not have to pay a proportionate share of plaintiff's attorney's fees because it informed plaintiff that it was actively pursuing its subrogation claim directly against the tortfeasor's insurer in an independent arbitration proceeding. In the alternative, Allstate argues that the court acted improperly and prematurely by deciding the matter in a summary judgment ruling. We affirm.

The material facts are not in dispute. On March 22, 1994, a truck owned by Barrett Trucking Company struck the vehicle plaintiff was driving. At the time of the accident, plaintiff was covered by an Allstate automobile insurance policy. Plaintiff filed a claim with Allstate for medical expenses and property damage. In August 1994, Allstate wrote to Barrett Trucking's insurer, CNA Insurance Company, stating that Allstate was entitled to subrogation of any payments made to plaintiff arising from injuries she sustained in the Barrett Trucking accident, and asking that CNA protect Allstate's right of subrogation in dealing with plaintiff. In January 1995, Allstate wrote to the attorney retained by plaintiff, stating that its policy allowed it to subrogate directly to the liability carrier any amount paid under the medical payments coverage, and noting that it had already advised CNA of Allstate's right of subrogation. In May 1995, Allstate again wrote to CNA, this time indicating how much money it had paid plaintiff up until that point, and stating that it expected to be paid directly for its subrogation claim. Allstate wrote to CNA a final time in February 1996, reiterating that CNA was responsible for reimbursing Allstate directly for all amounts paid to plaintiff "at the time of any settlement of her claim."

In April 1996, plaintiff filed a negligence action against Barrett Trucking. That claim was joined with a lawsuit plaintiff filed at the same time against another driver for injuries she sustained in a July 30, 1993 accident. Both plaintiff and the defendants retained medical experts, who were deposed at some point during the ensuing two years as the case progressed toward trial. The parties disputed causation, apportionment of damages, and the reasonableness and necessity of plaintiff's medical charges. In March 1998, Allstate declined to participate in a mediation session between plaintiff and Barrett Trucking. On March 30, 1998, shortly before the scheduled trial was to take place, plaintiff settled her claim against Barrett Trucking for $105,000. The parties' agreement expressly stated that the settlement amount included the $54,747 in medical payments that Allstate had made to plaintiff up until that point. The claim against the other defendant went to trial and resulted in a $150,000 plaintiff's verdict.

Meanwhile, on March 20, 1997, Allstate had filed a request for intercompany arbitration with CNA. Stating that it was filing for arbitration at that time only to prevent the tolling of the statute of limitations, Allstate requested that the proceedings be deferred on the grounds that plaintiff had not reached a medical end result and was still receiving benefits. Eventually, an arbitration hearing was set for March 17, 1998, but was tentatively rescheduled, at Allstate's request, for March 20, 1999, "due to companion claims and/or suits pending." Apparently, Allstate sought an arbitration hearing following resolution of plaintiff's lawsuits against the tortfeasors. No hearing ever took place, however.

On April 16, 1998, plaintiff filed the instant declaratory judgment action, requesting that the superior court reduce Allstate's subrogation recovery by a proportionate share of the one-third contingency fee and other expenses she incurred in settling the Barrett Trucking claim. The parties filed cross-motions for summary judgment. The superior court granted plaintiff's motion and denied Allstate's motion, ruling that under the "common fund" doctrine Allstate was obligated to pay a proportionate share of the attorney's fees that plaintiff incurred in creating a common fund from which Allstate benefitted without actively pursuing its subrogation interest independently. On appeal, Allstate argues that (1) Vermont does not recognize the common-fund doctrine; (2) the doctrine does not apply when the insurer elects to arbitrate its subrogation claim; (3) the superior court inappropriately resolved inferences in plaintiff's favor; and (4) the court did not give Allstate an opportunity to develop a factual record that could establish exceptions to the common fund doctrine.

"In reviewing a grant of summary judgment, we apply the same standard as the trial court." *City of St. Albans v. Northwest Reg'l Planning Comm'n*, 167 Vt. 466, 469, 708 A.2d 194, 196 (1998). Summary judgment is appropriate when the record demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See *Viles v. Vermont State Colleges*, 168 Vt. 459, 461, 724 A.2d 448, 450 (1998).

I.

Allstate first argues that Vermont has declined to recognize the common fund doctrine as an exception to the American Rule requiring each party to be responsible for its own attorney's fees, see *Robes v. Town of Hartford*, 161 Vt. 187, 198-99, 636 A.2d 342, 349-50 (1993), and that applying the doctrine in cases such as this would be

inappropriate because Vermont statutory law entitles insurers to collect the full amount of their subrogation interest. See 8 V.S.A. § 4203(4).

These arguments are not persuasive. Under the American Rule, which has been consistently applied in Vermont, "attorney's fees are ordinarily unrecoverable in the absence of statutory authority or the parties' contractual provision concerning this expense." *Robes*, 161 Vt. at 198, 636 A.2d at 349. One of the judicially created equitable exceptions to this rule is the common fund doctrine, which permits a prevailing party — whose lawsuit has created a fund that is intended to benefit not only that party but others as well — to recover, either from the fund itself or directly from those others enjoying the benefit, a proportional share of the attorney's fees and costs incurred in the lawsuit. See *id.* at 198-99, 636 A.2d at 349-50; *Savoie v. Merchants Bank*, 84 F.3d 52, 56 (2d Cir. 1996). This Court declined to recognize the doctrine in *Robes* because the defendants had prevailed on all counts, and the plaintiffs had not recovered any damages; thus, there was no "common fund" from which to award attorney's fees. See 161 Vt. at 199, 636 A.2d at 350; see also *Savoie*, 84 F.3d at 56 ("common fund doctrine does not apply . . . when fees are sought from the assets of the losing party"). We did not hold, however, as Allstate suggests, that the common fund doctrine could never be applied, regardless of the circumstances, as an equitable exception to the American Rule on attorney's fees. To the contrary, we indicated that the doctrine had been generally accepted by other jurisdictions that applied the American Rule. See *Robes*, 161 Vt. at 198, 636 A.2d at 349.

Indeed, Allstate does not cite a single jurisdiction in which a court has declared that the common fund doctrine can never be applied as an exception to the American Rule, regardless of the circumstances of the particular case being considered. With respect to application of the doctrine in the context of insurance subrogation cases such as the instant one, a leading commentator has observed:

When an insurance company lays claim to subrogation proceeds, obviously someone has to collect them, and attorneys rarely work for free. It is grossly inequitable to expect an insured, or other claimant, in the process of protecting his own interest, to protect those of the company as well and still pay counsel for his labors out of his own pocket, or out of the proceeds of the remaining funds. And this is precisely the view taken by the overwhelming majority of decisions, in

that a proportionate share of fees and expenses must be paid by the insurer or may be withheld from its share.

8A J. Appleman & J. Appleman, Insurance Law and Practice § 4903.85, at 335 (1981); see 16 R. Anderson & M. Rhodes, Couch Cyclopedia of Insurance Law § 61:47, at 131 (2d ed. 1983) ("Where the insured prosecutes the suit against the tortfeasor, thereby incurring legal expenses and court costs, the insured is generally entitled to recover such expenses prior to any recovery going to the insurer, or the insurer must at least pay its proportionate share of the expenses."); see also *Phillips v. State Farm Mut. Auto. Ins. Co.*, 73 F.3d 1535, 1539 n.2 (10th Cir. 1996) (citing state courts that require subrogees to pay share of attorney's fees incurred by their insureds in prosecuting actions against third-party tortfeasors); *Principal Cas. Ins. Co. v. Norwood*, 463 N.W.2d 66, 68 (Iowa 1990) (prevailing law in other jurisdictions is that insured may retain costs and expenses from fund recovered from wrongdoer and benefitting insurer); *Hedgebeth v. Medford*, 378 A.2d 226, 229-30 (N.J. 1977) (rule that right of subrogation carries with it equitable requirement of paying proportionate share of attorney's fees "is now clearly accepted"); *Amica Mut. Ins. Co. v. Maloney*, 903 P.2d 834, 839 (N.M. 1995) (joining majority of jurisdictions that have extended common fund doctrine to insurance cases where insured incurs attorney's fees in obtaining judgment or reaching settlement that benefits subrogated insurer); *Bowen v. American Family Ins. Group*, 504 N.W.2d 604, 606 (N.D. 1993) (joining "nearly unanimously adopted" rule that insurer's subrogation interest is subject to proportionate share of attorney's fees incurred by insured in securing settlement against third-party tortfeasor).

■ We agree with the reasoning of these courts and commentators, and thus hold that, under appropriate circumstances, the common fund doctrine may be applied to require an insurer to pay a proportionate share of the attorney's fees incurred by its insured in obtaining a judgment or settlement that satisfies the insurer's subrogated interest. See *York Ins. Group of Maine v. Van Hall*, 704 A.2d 366, 369 (Me. 1997) ("common fund doctrine is available in Maine in cases where an insured incurs attorney fees and expenses in recovering a judgment or settlement that benefits a subrogated insurer"). Nothing in the language of 8 V.S.A. § 4203(4) militates against this holding. Section 4203(4) provides that an insurer shall be subrogated to its insured against any party with respect to payment

of loss or expense under the applicable policy "to the amount of such payment," and the insured shall cooperate with the insurer to secure its right of subrogation. The phrase "to the amount of such payment" merely sets a limit on the extent of the right of subrogation and is not intended to preclude application of the common fund doctrine in insurance cases involving subrogation rights. Cf. *Van Hall*, 704 A.2d at 369 (phrase "to the extent of our payment" contained in insurance contract "does not clearly address the question whether the insured is permitted to retain a prorated portion of the cost of recovery from its obligation under the contract's subrogation clause").

We emphasize, however, that the common fund doctrine should be applied only after the trial court determines that it is equitable to do so because of the facts of the particular case at hand. See *Travelers Ins. Co. v. Williams*, 541 S.W.2d 587, 590 (Tenn. 1976) (doubting advisability of attempting to devise single rule to govern all cases concerning application of common fund doctrine). Before applying the doctrine, the court should examine all of the circumstances of the case, including the nature and extent of the subrogee's activities. See *Dunn, Brady, Goebel, Ulbrich, Morel, Kombrink & Hundman v. State Farm Ins. Co.*, 426 N.E.2d 315, 319-20 (Ill. App. Ct. 1981).

## II.

Anticipating this holding, Allstate contends that the doctrine should not apply when, as here, the insurer has independently and actively pursued its subrogation claim against the tortfeasor's insurer through arbitration proceedings. Otherwise, according to Allstate, the policies served by allowing insurers to resolve their disputes with other carriers informally through arbitration would be undermined. Allstate emphasizes that it (1) repeatedly notified plaintiff's attorney that it intended to pursue its subrogation claim directly against the tortfeasor's insurer through arbitration proceedings, (2) expressly rejected the attorney's offer to represent it in settling the Barrett Trucking case, and (3) initiated arbitration proceedings against CNA to perfect its claim. Allstate acknowledges that no arbitration proceedings were held before plaintiff's attorney settled the Barrett Trucking case, but contends that those proceedings were delayed only because plaintiff had not reached a medical end result and was continuing to receive benefits from Allstate. Allstate asserts that, under these circumstances, plaintiff's attorney acted as a "volunteer" to the extent that he rendered any services beneficial to Allstate, and thus plaintiff was not entitled to have Allstate pay a proportionate share of her attorney's fees.

Again, these arguments are not persuasive. Without question, Allstate expressly declined to take part in litigating or settling plaintiff's lawsuit against Barrett Trucking, and indeed eventually submitted a request to have its subrogation claim against CNA determined through intercompany arbitration proceedings. Nevertheless, the undisputed evidence demonstrates that Allstate intended to, and in fact did, await the results of the Barrett Trucking lawsuit, and thus took advantage of the efforts of plaintiff's attorney, before following through with its subrogation claim against CNA. From the outset of the Barrett Trucking case, Allstate advised both plaintiff and CNA of their responsibility to protect its subrogation claim. See 8 V.S.A. § 4203(4) (insured shall cooperate with insurer to secure its subrogation rights); cf. *Bowen*, 504 N.W.2d at 606 (neither insurance contract nor subrogation agreement advised insured that, in fulfilling his duty to protect insurer's subrogation interest, he would be responsible for all attorney's fees incurred in obtaining settlement with third party's insurer). Further, in its May 1995 letter to CNA, Allstate acknowledged its assumption that CNA had not paid the subrogation claim because of plaintiff's pending lawsuit, and then emphasized that it expected to be paid directly "at the time of any settlement of [plaintiff's] claim."

Allstate contends that it was merely waiting for a medical end result, and that the efforts of plaintiff's attorney were not needed for it to secure its subrogation claim. The undisputed evidence, however, demonstrates otherwise. Plaintiff had been in two, possibly three, other automobile accidents within months of the March 22, 1994 accident. Barrett Trucking vigorously defended against plaintiff's lawsuit, raising significant disputes concerning causation, apportionment of damages, and the reasonableness and necessity of the medical charges. Several experts were retained and deposed, and discovery continued over a two-year period. Allstate's assertion that it did all it could to secure its subrogation claim independently rings hollow when contrasted with the efforts of plaintiff's attorney in filing suit, engaging in discovery, and pursuing settlement through mediation to obtain a common fund that secured Allstate's subrogation claim. Moreover, notwithstanding its bare statement that liability was conceded, Allstate plainly benefitted from the efforts of plaintiff's attorney in securing its subrogation claim. Cf. *Sobczak v. Whitten*, 393 N.E.2d 1080, 1083 (Ill. App. Ct. 1979) (considering that negotiations were required before insured could obtain settlement in suit against tortfeasor, record did not support insurer's argument that liability

was clear, payment was certain, and settlement was foregone conclusion).

As noted, the common fund doctrine is grounded on equitable principles and applied on a case-by-case basis. See *Norwood*, 463 N.W.2d at 68 (equitable principles underlie rule that right to subrogation carries with it duty to pay proportionate share of attorney's fees); *Hedgebeth*, 378 A.2d at 230 (common fund doctrine is based on equitable principle that insurer should not be entitled to enjoy fruits of insured's judgment against tortfeasor without contributing in any way to costs or burdens of litigating that claim). In cases where the insurer demonstrates that it "actively participated in or substantially contributed to," recovery of the common fund, "the trial court may reduce or waive the insurer's proportionate contribution" to attorney's fees and court costs incurred in securing the fund. *Maloney*, 903 P.2d at 840. To claim active participation in a settlement, the insurer must demonstrate that it participated in settlement negotiations and contributed to obtaining the award. See *id.*

■ Allstate acknowledges not having participated in the instant settlement, but claims that it had a right to secure its subrogation claim independently through intercompany arbitration proceedings. That may be so, but rather than do so, Allstate sat back and awaited a settlement or judgment in the Barrett Trucking lawsuit before acting on its claim. Indeed, the arbitration proceedings were deferred, at Allstate's request, "due to companion claims and/or suits pending." Under the particular circumstances of this case, equity demands application of the common fund doctrine. See *id.* at 837-38, 840 (common fund doctrine applies in cases where, other than writing letters informing tortfeasors' insurers of subrogation interest and notifying insureds of intent to pursue subrogation rights independently, subrogated insurers sat back and waited for insureds to reach settlement with tortfeasors); cf. *Van Hall*, 704 A.2d at 369 n.5 (insurer's letter informing insured that it intended to pursue subrogation claim independently did not insulate insurer from contributing to attorney's fees incurred by insured in protecting insurer's claim; insurer cannot recover its subrogation interest from insured's settlement, and then deny responsibility for contributing to costs of that recovery); *Hedgebeth*, 378 A.2d at 230 (fact that insurer *might* have brought independent action to obtain reimbursement for amounts paid under insurance policy does not militate against rule that right of subrogation carries with it equitable requirement of paying proportionate share of attorney's fees).

The cases cited by Allstate in support of its position are distinguishable. See *CNA Ins. Cos. v. Johnson Galleries*, 639 So. 2d 1355, 1359 (Ala. 1994) (refusing to apply common fund doctrine because attorneys for insured "actively and consistently" sought to prevent subrogee from obtaining any part of settlement); *Cockman v. State Farm Auto. Ins. Co.*, 854 S.W.2d 343, 345 (Ark. 1993) (refusing to apply common fund doctrine because arbitration agreement required insurers to forego litigation, evidence clearly demonstrated that insurer had not refused to pursue its independent subrogation claim, and insured warranted in subrogation receipt that she would make no settlement or release regarding subrogated rights without insurer's written consent); *Osborne v. State Farm Mut. Auto. Ins. Co.*, 923 P.2d 304, 305-06 (Colo. Ct. App. 1996) (refusing to apply common fund doctrine because insured did not give insurer opportunity to participate in settlement negotiations, insurer expressed intent to pursue its claim independently in arbitration proceedings, and insurer expressed no intention to share in funds generated by insured's suit); *Dunn*, 426 N.E.2d at 318 (refusing to apply common fund doctrine because no "fund" was created where tortfeasor's insurer admitted liability and agreed to pay subrogation claim irrespective of insured's personal injury lawsuit, tortfeasor's insurer began making payments on subrogation claim before insured sued tortfeasor, settlement negotiations did not concern subrogated interests, and record demonstrated that subrogee expended substantial energy in pursuing its claim directly from tortfeasor's insurer); *Williams*, 541 S.W.2d at 590-91 (refusing to apply common fund doctrine because there was no express, implied, or quasi contractual relation between attorney and insurer, and thus attorney acted as volunteer).

## III.

Allstate argues, however, that, in granting summary judgment to plaintiff, the superior court improperly resolved inferences in plaintiff's favor. See *Lopez v. Concord Gen. Mut. Ins. Group*, 155 Vt. 320, 324, 583 A.2d 602, 605 (1990) (party opposing motion for summary judgment must be given benefit of all reasonable doubts and inferences in determining whether genuine issue of material fact exists). Specifically, Allstate contends that the trial court necessarily resolved doubts in plaintiff's favor by concluding that Allstate was not actively pursing its subrogation claim, despite undisputed evidence that (1) Allstate was a party to an arbitration agreement; (2) Allstate's practice was to protect its own subrogation interests through arbi-

474

tration; (3) Allstate notified all parties that it would protect its own interests; and (4) Allstate commenced arbitration proceedings.

■ For the reasons discussed in Part II of this opinion, we find no merit to this argument. The facts cited by Allstate are, for the most part, undisputed but not material to the trial court's determination that in this particular case Allstate did not actively pursue an independent action directly against CNA to secure its subrogation claim. The trial court concluded, and we agree, that the undisputed facts demonstrate that Allstate intended to, and in fact did, await the settlement in the Barrett Trucking litigation before collecting its subrogated interest.

## IV.

Finally, Allstate argues that even if this Court concludes that the common fund doctrine was properly applied in this case, we must remand the matter to permit Allstate to develop a factual record to determine if other exceptions to the doctrine may apply. Specifically, Allstate asserts its right to engage in additional discovery (1) to show that it actively participated to protect its own interest; (2) to determine whether plaintiff and her attorney understood that the attorney represented only her interests, and not those of Allstate; and (3) to explore whether the attorney's fees incurred by plaintiff were reasonable.

■ Once again, we find no merit to this argument. Allstate had the opportunity to avoid summary judgment by positing material facts in dispute. Indeed, the parties filed cross-motions for summary judgment that relied on affidavits supporting their respective positions. Nevertheless, Allstate was unable to point to disputed material facts precluding summary judgment. Nor did Allstate challenge before the superior court the reasonableness of the one-third contingency-fee arrangement between plaintiff and her attorney in the Barrett Trucking case. Although it had access to the fee agreement and voluminous medical records, depositions, pleadings, discovery materials, and other documents related to the Barrett Trucking case, Allstate provided no reason to suggest that the contingency fee was excessive or unreasonable. See *Maloney*, 903 P.2d at 841 (in determining whether attorney's fees apportioned to subrogated insurer are equitable, court must consider whether fee agreement was consistent with customary fee arrangements, keeping in mind that attorney's efforts in reaching entire settlement, not just in protecting

subrogated amount, must be considered; in this case, insurers neither presented evidence that contingency fees were unreasonable in relation to amount of work done to achieve final settlement, nor suggested that contingency fee agreement was inconsistent with standard industry practice in such cases). Accordingly, we see no reason to remand the case to reopen these matters.

## V.

The material facts in this case are not in dispute. Allstate urged plaintiff's attorney and CNA to protect its subrogation interest in the Barrett Trucking litigation, which would resolve any disputes concerning the extent of the tortfeasor's liability. Allstate's presettlement conduct, which Allstate characterizes as actively pursuing its subrogation interest independent of plaintiff's lawsuit, was described by the trial court as Allstate "sitting on its subrogation tuffet." Whatever the merits of Allstate's objection to the trial court's colorful phraseology, Allstate plainly sought to benefit from the services of plaintiff's attorney in securing its subrogation claim without paying for those services. Given the undisputed material facts, the law does not allow Allstate to do so.

*Affirmed.*