### Elizabeth E. DANIELS v. VERMONT CENTER FOR CRIME VICTIMS SERVICES

[790 A.2d 376]

No. 00-574

December 17, 2001. Plaintiff Elizabeth Daniels appeals from the Bennington Superior Court's Rule 12(b)(6) dismissal of her declaratory judgment action. Plaintiff, a crime victim, was compensated by the defendant, Vermont Center for Crime Victims Services (CCVS), under the Compensation to Victims of Crime Act, 13 V.S.A. §§ 5351-5361. Thereafter, she recovered substantial damages from the perpetrator's employer in the settlement of a personal injury action, and offered to repay CCVS only if CCVS bore a proportionate share of attorney's fees under the common fund exception to the American Rule on attorney's fees. In dismissing the action, the superior court held that plaintiff must reimburse CCVS without deducting the attorney's fees. We agree and affirm.

The facts are derived from plaintiff's complaint. In March 1998, plaintiff suffered serious injury as a result of an attack. Her attacker was later charged and convicted for his criminal conduct. Approximately two weeks after the attack, plaintiff applied to CCVS for compensation under the Compensation to Victims of Crime Act, 13 V.S.A. §§ 5351-5361. She received $10,000 from CCVS, upon condition that she subrogate her interest in any recovery from a person liable for her injuries to CCVS to the extent of the payment, as required by the Act, 13 V.S.A. § 5357. Part of the pay-

ment was made to healthcare providers with the remainder going to plaintiff directly.

In March 2000, with the aid of counsel, plaintiff settled a civil action against her attacker's employer for an amount exceeding the $10,000 payment to her from CCVS. Rather than pay the full $10,000 back to CCVS, plaintiff's attorney put it in escrow and filed a complaint for declaratory judgment with the Bennington Superior Court. Based on the common fund exception to the American Rule on attorney's fees, plaintiff maintained that CCVS is not entitled to full reimbursement of the $10,000, but rather must pay from it a proportionate share of the one-third contingency fee she incurred in settling the claim. Defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted, V.R.C.P. 12(b)(6), which plaintiff opposed. The superior court granted defendant's motion, ruling that the plain language of the subrogation statute, 13 V.S.A. § 5357, precludes plaintiff from relief. The court bolstered its conclusion by finding that the considerations of equity and policy behind the common fund doctrine "weigh heavily" against its application in this case.

On appeal, plaintiff argues that (1) the plain meaning of the subrogation statute does not preclude application of the common fund exception to the American Rule on attorney's fees, (2) under the common fund exception, CCVS should be required to pay a proportionate share of plaintiff's lawyer's one-third contingency fee, and (3) the trial court struck too early by dismissing plaintiff's declaratory judgment action without leave to amend.

The purpose of a motion to dismiss for failure to state a claim upon which relief can be granted is to test the law of the claim, not the facts which support it. *Levinsky v. Diamond*, 140 Vt. 595, 600, 442 A.2d 1277, 1280 (1982), *overruled on other grounds in Muzzy v. State*, 155 Vt. 279, 583 A.2d 82 (1990). Our review of conclusions of law is nondeferential and plenary. See *Thompson v. Dewey's South Royalton, Inc.*, 169 Vt. 274, 276, 733 A.2d 65, 67 (1999).

Plaintiff's claims are based on the common fund doctrine, which we adopted in the context of insurer subrogation for some cases in *Guiel v. Allstate Insurance Co.*, 170 Vt. 464, 756 A.2d 777 (2000). The common fund doctrine "permits a prevailing party — whose lawsuit has created a fund that is intended to benefit not only that party but others as well — to recover, either from the fund itself or directly from those others enjoying the benefit, a proportional share of the attorney's fees and costs incurred in the lawsuit." *Id.* at 468, 756 A.2d at 780. We held in *Guiel* that "under appropriate circumstances, the common fund doctrine may be applied to require an insurer to pay a proportionate share of the attorney's fees incurred by its insured in obtaining a judgment or settlement that satisfies the insurer's subrogated interest." *Id.* at 469, 756 A.2d at 781. The American Rule, on the other hand, requires parties to pay their own attorney's fees absent statutory authority, contractual agreement of the parties, or an equitable exception, as in *Guiel*. See *id.* at 468, 756 A.2d at 780.

Plaintiff acknowledges that if the governing statute requires her to reimburse the full amount she received from CCVS, the common fund doctrine cannot apply. See *Aylward v. Dragus*, 402 N.E.2d 700, 702 (Ill. App. Ct. 1980) (common fund doctrine does not apply to reimbursements to victims compensation agency absent statutory authorization); *Victims of Crime Fund v. Barry*, 792 P.2d 26, 27-28 (Nev. 1990) (same); *Dep't of Labor & Industries v. Dillon*, 626 P.2d 1004, 1006 (Wash. Ct. App. 1981) (same). Thus, we first consider the superior court holding that the statutory language precludes application of the common fund doctrine. The statute provides, in relevant part:

The state shall be subrogated to the rights of the victim . . . to whom cash payments are granted to the extent of the cash payments granted, less the amount of any fine imposed by the court on the perpetrator of the crime.

13 V.S.A. § 5357. In construing a statute, "our principal goal is to effectuate the intent of the Legislature." *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999). In determining legislative intent, we look first at the plain meaning of the statutory language. If the legislative intent is clear from the language, we enforce the statute "according to its terms without resorting to statutory construction." *Id.* "[W]e presume that all language in a statute was drafted advisedly, and that the plain ordinary meaning of the language used was intended." *State v. Brennan*, 172 Vt. 277, 280, 775 A.2d 919, 921 (2001) (citations omitted).

Section 5357 grants a right of subrogation to CCVS "to the extent of the cash payments granted." The wording clearly means that if the victim, as in this case, receives damages from a party responsible for her injury in an amount greater than the payment from CCVS, she must pay the full amount of the CCVS payment back. The language of § 5357 makes no provision for CCVS to pay any of a victim's attorney's fees in a civil action to recover damages in connection with the crime. We note that other courts have reached the same conclusion on identical or similar language. See *Victims of Crime Fund*, 792 P.2d at 27-28; *Dillon*, 626 P.2d at 1006.

Plaintiff asks us, in effect, to read into § 5357 a requirement that CCVS pay a proportional share of attorney's fees expended in obtaining her recovery as a matter of fairness. We are, however, constrained by the language of the statute. We note that in comparable situations dealing with indigent accident victims and Medicaid recipients, the Legislature made specific provision for the payment of attorney's fees. In 18 V.S.A. § 2251, the Legislature granted a lien to any hospital furnishing medical care to an accident victim upon any recovery for damages. The statute has a specific attorney's fee provision: the "lien shall not attach to one-third of said recovery or $500.00 whichever shall be the lesser and in addition said lien shall be subordinate to an attorney's lien." *Id.* Similarly, 33 V.S.A. § 1910 grants the Agency of Human Services a lien for Medicaid expenditures incurred in connection with an accident on a recipient's recovery of damages in a civil action. Again showing that it knows how to account for attorney's fees, the Legislature specifically provided in § 1910(i) that "the attorney for the recipient may withhold the agency's pro rata share of reasonably necessary costs and expenses incurred in asserting the claim." Where the Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such an action without legislative authority. See *In re Spencer*, 152 Vt. 330, 340, 566 A.2d 959, 965 (1989) (under Act 250, automatic issuance of permit in one part of statute and absence of same provision in another part of the statute shows that Legislature did not intend automatic issuance in the latter); see also *Aylward*, 402 N.E.2d at 702 (legislative allowance of use of common fund doctrine to allow collection of attorney's fees in public aid collection cases shows legislative silence in victim compensation fund cases does not authorize common fund doctrine).

Finally, plaintiff argues that the statutory language applicable in *Guiel*, where we applied the common fund doctrine, is indistinguishable from that before us. In *Guiel*, we held that a statute that specified required conditions of liability policies, including a condition

providing a right of subrogation "to the amount of such payment [of loss or expense under this policy]," did not prevent application of the common fund doctrine requiring the subrogated insurance carrier to pay a pro-rata share of attorney's fees. *Guiel*, 170 Vt. at 469-70, 756 A.2d at 781. We concluded that the language "merely sets a limit on the extent of the right of subrogation and is not intended to preclude application of the common fund doctrine in insurance cases involving subrogation rights." *Id.* at 470, 756 A.2d at 781. We stress that the context of *Guiel* was different from that before us. In *Guiel*, we were interpreting a regulatory statute that specified the required content of an insurance policy; here, the statute governs the reimbursement rights of a governmental agency. Particularly in this different context, we do not believe that 13 V.S.A. § 5357 can be read in the same way as we read the statute in *Guiel*.

Even if the statute allowed us to employ the common fund doctrine here, we would not do so. Thus, we reject plaintiff's second argument. The common fund doctrine is a judicially-created equitable exception to the rule that attorney's fees cannot be collected from another party, and we will apply it only where principles of equity and policy require it. We applied it for the first and only time in *Guiel*. There, the insured obtained a damage settlement in connection with an automobile accident. Under her insurance policy, the insurer was subrogated to the insured's right to recover from third parties up to the amount paid out under the insured's medical coverage. After obtaining the settlement, the insured filed a declaratory judgment action requesting that the subrogated insurer pay a proportionate share of the insured's attorney's fees. We upheld a lower court judgment granting the requested relief based on the court's conclusion that the insurer sought to benefit from the services of the insured's counsel without paying for them.

We need not decide whether we will extend the common fund doctrine beyond the insurance context present in *Guiel* to determine that we would not apply it here. The subrogation right in *Guiel* arose out of a commercial transaction in which the insured paid for medical coverage under which she collected. Here, the defendant is a government agency created for the public purpose of helping victims of crime recover from their victimization. The repayment amounts go into the victim compensation fund to be used to help other victims. See 13 V.S.A. §§ 5356(b), 7282(a). To the extent recoveries go to pay attorney's fees, and not to pay the fund, fewer victims can be helped. In addition, as the Nevada Supreme Court held in a similar case under the Nevada victim compensation statute, the victim compensation fund is not unjustly enriched by receiving full compensation. See *Victims of Crime Fund*, 792 P.2d at 27.

Plaintiff finally argues that the trial court should not have dismissed the case, but instead should have given plaintiff leave to amend her complaint. We agree that a Rule 12(b)(6) motion ordinarily should not be granted "unless it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Richards v. Town of Norwich*, 169 Vt. 44, 48, 726 A.2d 81, 85 (1999) (citation omitted). Plaintiff argues that because the application of the common fund doctrine depends upon the facts and circumstances of each case, she was entitled to develop a record that application of the doctrine was appropriate in this case. There are, however, no relevant facts in dispute in this case. In view of our ruling that 13 V.S.A. § 5357 precludes application of the common fund doctrine, no facts or circumstances could make a difference in the outcome.

We agree with plaintiff that the better method of resolution of the controversy would be to issue a declaratory judgment, albeit one that declares that plaintiff owes the full amount she received from CCVS. Nevertheless, the dismissal of plaintiff's complaint accomplished the same purpose.

*Affirmed.*