NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 40

No. 24-AP-168

| | |
|---|---|
| WWSAF Special Partners Group, LLC (Series D) et al. | Supreme Court |
| v. | On Appeal from Superior Court, Chittenden Unit, Civil Division |
| Costello, Valente & Gentry, P.C. et al. | April Term, 2025 |

Helen M. Toor, J.

Matthew B. Byrne of Gravel & Shea PC Burlington, for Plaintiff-Appellee/Cross-Appellant Gravel & Shea PC.

Laura D. Devine of Boyle | Shaughnessy Law, PC, Woodstock, for Defendants-Appellants/ Cross-Appellees.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **CARROLL, J.** This case involves a dispute between two law firms over attorney's fees in separate litigation. As relevant to this appeal, plaintiff Gravel & Shea PC brought suit against defendant Costello, Valente & Gentry, P.C., claiming defendant was unjustly enriched for receiving attorney's fees without compensating plaintiff for the work plaintiff did to procure the settlement from which defendant received its fees. Defendant appeals a trial court order granting summary judgment to plaintiff on the grounds that, under the common-fund doctrine, equities require defendant to contribute to plaintiff's attorney's fees. Plaintiff cross-appeals the court's order following a bench trial, challenging the court's calculation of damages. We agree with defendant that the trial court improperly expanded the common-fund doctrine to apply to this

case and thus reverse the court's order granting summary judgment to plaintiff and remand for the court to enter summary judgment in favor of defendant. Accordingly, we do not reach plaintiff's cross-appeal.

¶ 2. The following facts are undisputed for summary-judgment purposes. The present dispute arises from lawsuits involving an employee's injury at work and his employer's worker's compensation insurance. One case is employer's[1] lawsuit against its insurer, Cornerstone Risk Management, LLC. Plaintiff represented employer in this lawsuit and had a contingency fee arrangement with employer. Employer brought this suit to recover damages alleging Cornerstone failed to procure worker's compensation insurance for employer. Employer asserted "it did not have the financial resources to compensate [employee] for his injuries on its own, without insurance." Employer sought damages from Cornerstone including the amount employee was seeking from employer, the amount employer already paid employee for his injuries, and employer's own losses for not having worker's compensation insurance. Lloyd's of London provided a defense to Cornerstone as Cornerstone's professional-liability insurer. Cornerstone filed motions to dismiss and for summary judgment. Employer prevailed on both motions.

¶ 3. The other case is employee's personal-injury lawsuit against employer. Defendant represented employee and had a contingency-fee arrangement with employee. Plaintiff also represented employer in this lawsuit.

¶ 4. Employer and Cornerstone agreed to mediation and allowed employee to participate. After mediation was unsuccessful, employee settled with Lloyd's independently. As part of the settlement agreement, employee agreed to dismiss his claims against employer, as Lloyd's sought "to limit its and their exposure in the Cornerstone Action by agreeing to settle

---

[1] Employer sold its right to recover any claims in these cases to plaintiff WWSAF Special Partner Group, LLC. For the purposes of this appeal, we make no distinction between employer and WWSAF.

[employee's] claims for his injuries in exchange for [employee] dismissing his claims against [employer]." Employer was not a party to this agreement. Defendant received its contingency fee from the settlement proceeds. Employer and Cornerstone later settled, and plaintiff received its contingency fee from those settlement proceeds.[2]

¶ 5.      The current dispute involves, as relevant to this appeal, a third action—plaintiff's unjust-enrichment claim against defendant. Plaintiff claims that it is entitled to defendant's fee from the settlement proceeds between employee and Lloyd's because, had employer not sued Cornerstone and not been successful in defeating Cornerstone's motions in the Cornerstone action, employee would not have settled with Lloyd's. After discovery, plaintiff and defendant filed cross-motions for summary judgment.

¶ 6.      The trial court granted summary judgment to plaintiff on the issue of liability. The court determined that the undisputed facts established defendant benefited from plaintiff bringing Cornerstone into the litigation, plaintiff's motion practice against Cornerstone, and plaintiff permitting employee to participate in the mediation with Cornerstone because these events led to the settlement and defendant received its attorney's fees from these settlement proceeds. The court concluded that equities entitled plaintiff to a portion of defendant's fees under the common-fund doctrine. See Guiel v. Allstate Ins. Co., 170 Vt. 464, 468, 756 A.2d 777, 780 (2000) (recognizing common-fund doctrine allows party "whose lawsuit has created a fund . . . to recover . . . directly from those others enjoying the benefit, a proportional share of the attorney's fees and costs incurred in the lawsuit").

¶ 7.      The court determined that although employee was not a party to employer's lawsuit against Cornerstone, the main reason employer sued Cornerstone was employee's lawsuit against employer and that employee otherwise had no claim against Cornerstone or Lloyd's. The court

---

[2] This settlement occurred after the suit at issue in this appeal was filed.

3

concluded that Cornerstone would not have settled with employee, or anyone, if plaintiff had not succeeded on the motions to dismiss or for summary judgment in employer's lawsuit against Cornerstone. The court rejected defendant's argument that the parties were adversaries in employee's lawsuit and determined that the interests of employee and employer became aligned against Cornerstone and Lloyd's thus justifying application of the common-fund doctrine. Specifically, the court concluded that employer and employee were not adversaries "because they were interested in the same outcome: to recover money from a third party to compensate [employee]."

¶ 8. The court determined the issue of damages was not suitable for summary judgment because the parties had not included information in their statements of undisputed facts sufficient for the court to decide an appropriate award. As such, the issue of damages, in the form of attorney's fees, proceeded to trial. After a bench trial, the court issued a ruling on the merits and awarded damages to plaintiff. This appeal followed.

¶ 9. On appeal, defendant argues the court erred in granting summary judgment to plaintiff on the unjust-enrichment claim. Defendant asserts that the court improperly expanded the common-fund doctrine beyond this Court's application in Guiel v. Allstate Insurance Co., the facts do not support a claim of unjust enrichment under the circumstances, and plaintiff's claim is barred under the doctrine of unclean hands.[3] Plaintiff cross-appeals, challenging the court's damages award. Given our conclusion that the court erred in granting summary judgment to plaintiff, we do not reach plaintiff's cross-appeal.

¶ 10. "We review summary judgment decisions de novo, using the same standard as the trial court." Morisseau v. Hannaford Bros., 2016 VT 17, ¶ 12, 201 Vt. 313, 141 A.3d 745.

---

[3] The parties dispute whether defendant's "unclean-hands" argument was preserved for appeal. Regardless, we do not reach this argument given our conclusion that the court misapplied the common-fund doctrine in this case.

4

Summary judgment is proper if "the material undisputed facts show that the moving party is entitled to judgment as a matter of law." Id. "The nonmoving party is entitled to all reasonable doubts and inferences." Id. (quotation omitted). However, "[w]hen there are cross-motions for summary judgment, . . . both parties are entitled to the benefit of all reasonable doubts and inferences when being considered as the nonmoving party." In re Mountain Top Inn & Resort, 2020 VT 57, ¶ 18, 212 Vt. 554, 238 A.3d 637 (quotation omitted).

¶ 11. To succeed on a claim for unjust enrichment, plaintiff must demonstrate that "(1) a benefit was conferred on defendant; (2) defendant accepted that benefit; and (3) it would be inequitable for defendant not to compensate plaintiff for the value of the benefit." Pettersen v. Monaghan Safar Ducham PLLC, 2021 VT 16, ¶ 16, 214 Vt. 269, 256 A.3d 604 (quotation omitted). "[W]hether a claim for unjust enrichment can be maintained, given certain facts, is a legal question we review de novo." Beldock v. VWSD, LLC, 2023 VT 35, ¶ 68, 218 Vt. 144, 307 A.3d 209. "When a party can maintain a claim for unjust enrichment, we give deference to the trial court's decision to grant or withhold equitable remedies and accordingly review the trial court's decision for an abuse of discretion." Id. (quotation omitted).

¶ 12. The issue on appeal is whether plaintiff can maintain a claim for unjust enrichment. "Evaluating an unjust enrichment claim involves a realistic determination based on a broad view of the human setting involved rather than a limited inquiry confined to an isolated transaction." Pettersen, 2021 VT 16, ¶ 16 (quotation omitted). This case presents a unique set of circumstances in which plaintiff's unjust-enrichment claim is based on its attorney's fees. Plaintiff argues defendant was unjustly enriched because but for their work in the Cornerstone action, defendant would have received a considerably lower fee pursuant to its contingency-fee agreement with employee, or no fee at all, in employee's case against employer, and thus it would be inequitable for defendant not to compensate plaintiff for its attorney's fees for that work.

5

¶ 13.    Vermont follows the American Rule regarding attorney's fees, "which provides that attorney's fees are ordinarily unrecoverable in the absence of statutory authority or the parties' contractual provision concerning this expense." Ovitt v. Am. Home Assurance Co., 2009 VT 26, ¶ 5, 185 Vt. 624, 971 A.2d 662 (mem.) (quotation omitted).  Absent any statutory or contractual authority, the trial court has discretion to award attorney's fees under its equitable authority.  Id. However, "deviation from the general rule is only justified in exceptional cases."  Id. (quotation omitted).

¶ 14.    Here, the trial court applied the common-fund doctrine, "one of the judicially created equitable exceptions to the American Rule."  Id. (quotation omitted).  Accordingly, the threshold issue on appeal is whether the common-fund doctrine applies in this case and thus whether the court could award attorney's fees to plaintiffs under this theory.  We review the court's decision to apply the common-fund doctrine and award attorney's fees on that basis under an abuse-of-discretion standard.  See Ovitt, 2009 VT 26, ¶ 5; see also Guiel, 170 Vt. at 470-72, 756 A.2d at 782-83.  To the extent the court's application of the doctrine involves questions of law— such as whether a common fund was created or whether the doctrine is available under the circumstances—we review those issues de novo.  See Robes v. Town of Hartford, 161 Vt. 187, 198-99, 636 A.2d 342, 349-50 (1993).

¶ 15.    The common-fund doctrine "arises out of the equitable theory of unjust enrichment." Morris B. Chapman & Assocs., Ltd. v. Kitzman, 739 N.E.2d 1263, 1270 (Ill. 2000). It "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).  In general, the common-fund doctrine allows

> a prevailing party—whose lawsuit has created a fund that is intended to benefit not only that party but others as well—to recover, either from the fund itself or directly from those others enjoying the benefit, a proportional share of the attorney's fees and costs incurred in the lawsuit.

Guiel, 170 Vt. at 468, 756 A.2d at 780.  In other words, if "a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or perseveration of that fund," then "such plaintiff or plaintiffs may be awarded attorney's fees out of the fund."  Braude v. Auto. Club of S. Cal., 223 Cal. Rptr. 914, 1005 (Cal. Ct. App. 1986) (quotation omitted).  The common-fund doctrine is available when a plaintiff's efforts recover a judgment or settlement.  See Guiel, 170 Vt. at 469, 756 A.2d at 781 ("[T]he common fund doctrine may be applied to require an insurer to pay a proportionate share of the attorney's fees incurred by its insured in obtaining a judgment or settlement that satisfies the insurer's subrogated interest."); see also Restatement (Third) of Restitution & Unjust Enrichment § 29 cmt. c (2011) [hereinafter Restatement] ("If the action involves no fee-shifting statute, a fund created by settlement is indistinguishable from a fund created by judgment.").  However, the doctrine does not apply if "the fee award would not come from a common fund."  Savoie v. Merchs. Bank, 84 F.3d 52, 56 (2d Cir. 1996).

¶ 16.    This Court applied the common-fund doctrine for the first and only time in Guiel v. Allstate Insurance Co.  In Guiel, the plaintiff's insurance company made medical payments to the plaintiff following an automobile accident.  The plaintiff's insurance company also notified the insurer of the owner of the other vehicle in the accident that it was entitled to subrogation of those payments.  The plaintiff filed a negligence action against the company who owned the other vehicle involved in the accident.  The case settled.  After the settlement, the plaintiff filed a declaratory-judgment action seeking to reduce her insurance company's subrogation interest by a proportional share of her attorney's one-third contingency fee.  The trial court agreed, applying the common-fund doctrine.

¶ 17.    On appeal, we affirmed, recognizing "under appropriate circumstances, the common fund doctrine may be applied to require an insurer to pay a proportionate share of the

7

attorney's fees incurred by its insured in obtaining a judgment or settlement that satisfies the insurer's subrogated interest" unless the insurer can demonstrate that it "actively participated in or substantially contributed to, recovery of the common fund." Guiel, 170 Vt. at 469, 472, 756 A.2d at 781, 783 (quotation omitted) (recognizing other jurisdictions apply common-fund doctrine in these circumstances). Explaining that the "common fund doctrine is based on [the] equitable principal that [a beneficiary] should not be entitled to enjoy [the] fruits of [the claimant's] judgment against [another] without contributing in any way to [the] costs or burdens of litigating that claim," we emphasized:

> When an insurance company lays claim to subrogation proceeds, obviously someone has to collect them, and attorneys rarely work for free. It is grossly inequitable to expect an insured, or other claimant, in the process of protecting his own interest, to protect those of the company as well and still pay counsel for his labors out of his own pocket, or out of the proceeds of the remaining funds. And this is precisely the view taken by the overwhelming majority of decisions, in that a proportionate share of fees and expenses must be paid by the insurer or may be withheld from its share.

Id. at 468-69, 472-73, 756 A.2d at 780-81, 783 (quotation omitted) (collecting cases). We agreed with other "courts and commentators" and held that "[u]nder the particular circumstances of th[at] case, equity demand[ed] application of the common fund doctrine." Id. at 472, 756 A.2d at 783. The trial court appropriately applied the common-fund doctrine because the plaintiff's settlement "secured [the insurer's] subrogation claim" and the insurer failed to "demonstrate that it participated in settlement negotiations and contributed to obtaining the award." Id. at 471-72, 756 A.2d at 782-83.

¶ 18.    This case is not "analogous" to the circumstances in Guiel, as plaintiff suggests. In Guiel, we held that the common-fund doctrine is applicable to cases in which the insured obtains "a judgment or settlement that satisfies" the insured's claim against the third-party tortfeasor and "the insurer's subrogated interest." 170 Vt. at 469-70, 756 A.2d at 781 (recognizing "[n]othing in the language of 8 V.S.A. § 4203(4)," which provides "an insurer shall be subrogated to its insured

8

against any party with respect to payment of loss or expense," "militate[d] against this holding"). As the Supreme Court of Tennessee explained in <u>Travelers Insurance Co. v. Williams</u>, "[u]pon payment by the insurer of a loss, it becomes the real party in interest with respect to the subrogation claim, and has the right to bring suit in the name of the insured, or in its own name." 541 S.W.2d 587, 590 (Tenn. 1976) (citations omitted). Accordingly, if the insured initiates the lawsuit and, after prevailing in such lawsuit, secures the insurer's subrogation interest without any contribution from the insurer, the common-fund doctrine justifies reducing the insurer's subrogation interest by a proportional share of the insured's attorney's fees for securing "a judgment or settlement that satisfies the insurer's subrogated interest." <u>Guiel</u>, 170 Vt. at 468-69, 756 A.2d at 780-81.

¶ 19. The parties in this case bear an entirely different relationship than the ones present in <u>Guiel</u>, and this Court has yet to extend the common-fund doctrine beyond the insurance-subrogation context. See <u>Daniels v. Vt. Ctr. for Crime Victims Servs.</u>, 173 Vt. 521, 524, 790 A.2d 376, 380 (2001) (mem.) (declining to consider whether to extend common-fund doctrine "beyond the insurance context"). A classic application of the common-fund doctrine "is the entitlement to be allocated a fee from a class recovery, asserted by the successful attorney for the class, where the attorney is not entitled by statute to obtain a fee from the adverse party." Restatement § 29 cmt. b; see <u>Beldock</u>, 2023 VT 35, ¶ 76 ("When addressing a question regarding unjust enrichment where our case law is lacking, we have often turned to the Restatement for guidance."). However, the doctrine is not so limited to the context of class actions, insurance subrogation cases, or any type of case. <u>Guiel</u>, 170 Vt. at 470, 756 A.2d at 781 (noting it depends on whether "it is equitable to do so because of the facts of the particular case at hand" and "the nature and extent of the [beneficiary's] activities").

¶ 20. "Whether the doctrine applies in a particular case is not determined by a label, but rather by a proper understanding of the doctrine and its limitations." <u>Kitzman</u>, 739 N.E.2d at 1272. The purpose of the doctrine is "to spread litigation expenses among all beneficiaries of a preserved

9

fund so that litigant-beneficiaries are not required to bear the entire financial burden of the litigation while [nonparty-]beneficiaries receive the benefits at no cost." Moro v. State, 384 P.3d 504, 510 (Or. 2016) (alteration in original) (quotation omitted). As the Restatement explains, "[r]estitution claims arise naturally [when] . . . the vindication of one person's legal position so often confers an identical benefit on other persons similarly situated." Restatement § 29 cmt. a. By reason of the beneficiaries' "interconnected interests . . . the claimant cannot pursue justifiable, self-interested objectives without benefiting the [other beneficiaries] as well." Id.; see Maynard v. Parker, 369 N.E.2d 352, 355 (Ill. App. Ct. 1977) (explaining doctrine is applied in insurance-subrogation cases, like Guiel, because "[t]he obligation of the subrogated insurer to share in the costs of recovery from a third party wrongdoer arises because the insurer occupies the position of the insured with coextensive rights and liabilities").

¶ 21. The common fund doctrine is limited to cases in which a party has "successfully created a 'common fund.' " Robes, 161 Vt. at 199, 636 A.2d at 350 (declining to apply common-fund doctrine because defendants prevailed on all counts and plaintiffs did not recover damages); see Haggart v. Woodley, 809 F.3d 1336, 1352 (Fed. Cir.) ("Although often collapsed by courts into a single analysis, . . . the question of whether a common fund has been created is distinct from whether the doctrine may be applied."), cert. denied, 579 U.S. 928 (2016). A common fund, as defined by the Restatement, is a fund that "consists of money or other property in which two or more persons (the 'beneficiaries') are entitled to share by reason of their common or parallel interests therein." Restatement § 29(1). "A 'claimant' is a beneficiary, or a person acting by agreement on behalf of a beneficiary, who succeeds in creating, preserving, or enlarging a common fund by asserting the legal rights of a beneficiary." Id.; see Guiel, 170 Vt. at 468, 756 A.2d at 780.

¶ 22. As the Restatement explains, the requirement that a fund commonly held between at least the claimant and the beneficiary exist "establishes the minimum connection between the claimant, the fund, and the defendant." Restatement § 29 cmt. e. It serves as a "limiting function"

10

to "guard against overextending the rationale for the claim" because otherwise "the benefits in question are either too generalized or too remote to justify a liability to pay for unrequested services." Id. "There are, of course, many situations in which the work of an attorney proves useful to persons other than his own client." Travelers Ins. Co., 541 S.W.2d at 589. But a common fund is not created as "merely a matter of cause and effect" or "merely because the eventual outcome produced a benefit the claimant did not seek." Restatement § 29 cmts. d, f. This limitation is consistent with the purpose of the common-fund doctrine as an exception to the American Rule in which "fees are awarded not, as in a 'prevailing party' case, to make the plaintiff whole by shifting all costs to the wrongdoer, but instead to spread the costs among those on whose behalf the case was brought and who benefitted from plaintiff's efforts." Moro, 384 P.3d at 510-11 (quotation omitted); see also L&D Invs., Inc. v. Antero Res. Corp., 887 S.E.2d 208, 219 (W. Va. 2023) (" '[A]ward[ing] attorney's fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them.' " (alteration omitted) (quoting Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 396-97 (1970)).

¶ 23.    Here, plaintiff argues that it should be awarded fees for the work it did for its client in one case, that benefitted the attorney of its client's adversary in another. Notwithstanding any benefit conferred on defendant, the common-fund doctrine cannot apply. Here, employer, on whose behalf plaintiff was acting, was not a beneficiary to the settlement proceeds, or the fund from which plaintiff seeks compensation. Therefore, plaintiff's efforts on behalf of employee have not created a common fund.[4] Cf. Kitzman, 739 N.E.2d at 1270 (applying common-fund doctrine because "[plaintiff's attorney] alone pursued this case for longer than three years before securing a[] . . . settlement for the benefit of all the heirs, including [defendants]" and plaintiff).

_____

[4] Whether the settlement proceeds, or defendant's attorney's fees from those settlement proceeds constitute the fund does not alter our analysis.

¶ 24. In any event, plaintiff is not entitled to attorney's fees under the common-fund doctrine merely because employee ultimately settled with Lloyd's. See Domenella v. Domenella, 513 N.E.2d 17, 20 (Ill. App. Ct. 1987) ("The common fund doctrine is not applicable here because the plaintiff sought to preserve his own interest and only coincidentally benefited others."); United States ex rel. Bogart v. King Pharms., 493 F.3d 323, 330 (3d Cir. 2007) (recognizing claimant must be "more than an initial impetus behind the creation of a benefit" (quotation omitted)); Gabrielson v. City of Long Beach, 363 P.2d 883, 886 (Cal. 1961) (recognizing that extending common-fund doctrine to apply in circumstances "merely because the attorney's services have benefited the class to whom the fund belonged would place his interests in conflict with those of his client"). Any benefit conferred on defendant as a result of plaintiff's efforts on behalf of its client is incidental. See Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 14, 198 Vt. 420, 115 A.3d 1009 ("[I]ncidental benefits—benefits conferred on the recipient by work that the claimant undertook for its own benefit"—are generally not "recoverable in restitution unless the benefits are a consequence of mistake, fraud, or compulsion." (citing Restatement § 30 cmt. b)); CNA Ins. Cos. v. Johnson Galleries of Opelika, Inc., 639 So. 2d 1355, 1359 (Ala. 1994) ("[A] benefit can be an incidental, rather than an intended, result of an attorney's efforts, if the relationship between the attorney and the 'nonclient' person receiving the benefit is an adversarial one.").

¶ 25. We decline to extend the common-fund doctrine beyond the insurance subrogation context to the circumstances before us here because there is no common fund. The cases relied on by plaintiff involving class-action objectors do not support a contrary conclusion. See, e.g., Levitt v. Sw. Airlines Co. (In re Sw. Airlines Voucher Litig.), 898 F.3d 740, 746 (7th Cir. 2018) (common-fund doctrine appropriate for objecting party's counsel who negotiated and tripled "relief for the class"); Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co., 513 F. Supp. 3d 202, 210 (D. Mass 2021) (common-fund award appropriate for court-appointed work that benefited class). Accordingly, plaintiff cannot maintain an unjust-enrichment claim as a matter of law under these

facts.  We thus reverse the court's order granting summary judgment to plaintiff and remand for the court to enter summary judgment in favor of defendant.

Reversed and remanded for the trial court to enter summary judgment in favor of defendant.

FOR THE COURT:

_____
Associate Justice

13