NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 125

No. 2014-275

| | |
|---|---|
| Janet McKinstry and Mark McKinstry | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Fecteau Residential Homes, Inc. d/b/a Fecteau Homes | March Term, 2015 |

Helen M. Toor, J.

Joshua L. Simonds of The Burlington Law Practice, PLLC, and Kathryn G. Kent of Kent Law Practice, PLLC, Burlington, for Plaintiffs-Appellants.

Robert Halpert and Stephen L. Cusick of Zalinger Cameron & Lambek, P.C., Montpelier, for Defendant-Appellee.

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **DOOLEY, J.**    Plaintiff buyers in this consumer fraud action appeal from an attorney's fee award substantially lower than they requested.  Defendant seller has cross-appealed from the damage award.  We affirm the damage award, and reverse and modify a portion of the fee award.

¶ 2.    The facts, viewed in the light most favorable to the judgment, may be summarized as follows.  Fecteau Residential Homes, Inc. (seller) is in the business of selling manufactured modular homes.  In early November of 2010, Janet and Mark McKinstry (buyers) entered into a written contract with seller for the purchase of a demonstrator modular home on seller's lot.

Buyers tendered a $5000 deposit toward the purchase price, obtained financing, and engaged a contractor to lay the necessary footings and foundation for the home.

¶ 3.    Shortly thereafter, however, seller's owner Vic Fecteau called buyers to offer them a new, identical modular home at the same price instead of the demonstrator model for which they had contracted for reasons related to financial difficulties in obtaining a replacement floor model from that particular manufacturer. Buyers rejected the offer, the parties argued, and Fecteau thereupon cancelled the deal and subsequently returned the $5000 deposit. Buyers purchased a slightly larger modular home from a different dealer, which required modifications to the partially completed foundation to install.

¶ 4.    Buyers then filed this action under the Consumer Protection Act,[1] 9 V.S.A. §§ 2451-2480g (Act), alleging that seller misrepresented its intention to sell them the demonstrator model for which they had contracted; that they relied to their detriment on the misrepresentation, in part by paying for a foundation "to meet the dimensions of the home sold to them by [seller]"; and that they incurred additional expenses when forced to install a different model. Buyers sought damages, exemplary damages, and attorney's fees.

¶ 5.    Seller subsequently moved for summary judgment, asserting that buyers had failed to establish an essential element of consumer fraud by showing a misrepresentation or omission of material fact at the time of contracting, failed to establish that they were "consumers" within the meaning of the Act, and failed to mitigate their damages. In May 2013, the court issued a written decision, denying the motion. The court found that genuine issues of material fact existed as to whether seller actually intended to sell the demonstration model at the time of contracting, whether buyers were consumers who intended to purchase the home for

_____

[1]    As many of our decisions reflect, the statute was formerly known as the Consumer Fraud Act. The Legislature changed the name to the Consumer Protection Act in 2012. See 2011, No. 109 (Adj. Sess.).

personal use rather than resale, and whether buyers had suffered any actual damages, which precluded entry of summary judgment.

¶ 6.    Following a two-day trial in October 2013, the jury returned a special verdict in favor of buyers, answering "Yes" to the question, "[w]as there consumer fraud," and awarding damages of $1,000.  Buyers thereafter moved for attorney's fees totaling $69,614.17 and costs of $1,732.40.   The motion was supported by their lead attorney's affidavit setting forth his background and experience and that of his associate counsel on the case; their hourly billing rates of $275 and $225 respectively, which they represented to be reasonable, customary, and commensurate with their training and experience; a summary of each attorney's responsibilities and hours billed during the three so-called "phases" of the litigation, described as the preliminary investigation, discovery, and trial; and timesheets detailing the billed hours for each attorney. Seller opposed the motion, asserting that the award of "nominal" or "minimal" damages did not entitle buyers to an award of attorney's fees, or, alternatively, that the award should be "drastically reduced" to reflect buyers' limited success at trial and their attorneys' "unreasonable hourly" rates and "duplicative and excessive" hours.  Seller requested that the court take judicial notice of affidavits filed by attorneys in an unrelated consumer-fraud action stating that the standard rate for an experienced attorney in central Vermont is $225 per hour.  Seller also moved to offset any attorney's fee award by the $5000 deposit refunded to buyers in order to a "preclude double recovery" under the Act.

¶ 7.    The trial court issued a written ruling on the motions in April 2014.  The court characterized the action as "a strange one" which "puzzled" it from the start owing to buyers' objection to purchasing a "<u>new</u> version of the same home for the same price"; found that the damage award of $1,000 was "a nominal amount and significantly less than [buyers] were seeking"; and observed that the action served no broader consumer-protection interest. In addition, the court found "no reason that this case required two attorneys" as the "issues were

limited and the facts were not particularly complicated." The court thus concluded: "Given the minimal recovery, the fact that recovery was questionable from the start, and the lack of any public purpose served by this case, the court concludes that a reasonable fee award for the recovery here is $15,000." The court granted buyers' request for costs with the exception of parking and meals, for a total of $1360.

¶ 8. Turning to seller's motion for a $5000 offset, the court concluded that, under the Act, buyers were not entitled to both a return of their consideration and an award of damages, and determined that "the $5000 will be treated as a credit toward the attorney's fees." Accordingly, the court entered judgment for buyers in the amount of $1000 in damages, $1360 in costs, and $10,000 in attorney's fees, for a total award of $12,360.

¶ 9. Seller subsequently moved for judgment notwithstanding the verdict to overturn the entire judgment on the ground that buyers "were not entitled as a matter of law to bring their claim under the [Act] after having accepted return of their consideration." Buyers opposed the motion, and also moved for reconsideration of the attorney's fee award, asserting that the $5000 offset was improper, and that the court had "not provided an adequate explanation for its drastic reduction" in attorney's fees. The court denied seller's motion in a brief entry order, ruling that the election-of-remedies argument was an affirmative defense which was not raised in seller's answer and therefore was waived, and "decline[d] [buyers'] request to reconsider the fee award." These appeals followed.

¶ 10. Turning first to the cross-appeal, seller contends the trial court erred in failing to grant its motions for summary judgment and judgment as a matter of law because the evidence showed no material misrepresentation or omission prior to the signing of the contract. Summary judgment is proper only where the undisputed facts show that the movant is entitled to judgment as a matter of law. Bonanno v. Verizon Bus. Network Sys., 2014 VT 24, ¶ 8, 196 Vt. 62, 93 A.3d 146. The nonmoving party is entitled to "the benefit of all reasonable doubts and

4

inferences." Ianelli v. U.S. Bank, 2010 VT 34, ¶ 7, 187 Vt. 644, 996 A.2d 722 (mem.) (quotation omitted). Similarly, the granting of a motion for entry of judgment as a matter of law is appropriate only where the evidence, viewed in the light most favorable to the nonmoving party, provides no legally sufficient basis for a jury to find for the nonmoving party. Monahan v. GMAC Mortg. Corp., 2005 VT 110, ¶ 2, 179 Vt. 167, 893 A.2d 298; Perry v. Green Mountain Mall, 2004 VT 69, ¶ 7, 177 Vt. 109, 857 A.2d 793. To establish a consumer fraud claim under the Act, a plaintiff must show that the defendant made a misrepresentation or omission likely to mislead consumers; that the plaintiff's interpretation of the misrepresentation or omission was reasonable; and that the misrepresentation or omission was material in that it affected the plaintiff's purchasing decision. Jordan v. Nissan N. Am., Inc., 2004 VT 27, ¶ 5, 176 Vt. 465, 853 A.2d 40.

¶ 11.    Assessed in light of these standards, the record evidence here was sufficient to support the judgment. Buyers' theory was that seller knew at the time of contracting that it could not obtain financing to replace the demonstrator model but agreed nevertheless to sell it without actually intending to do so, and later sought unsuccessfully to persuade buyers to purchase a new model on order rather than the floor model. Buyers both testified without dispute that, when they expressed an interest in the demonstrator model, Dan Fecteau—the salesperson and owner's son—refused to sell it because he knew that seller could not obtaining financing to replace it; that they later telephoned Dan Fecteau to restate their interest in purchasing only the floor model; and that Dan then spoke with the owner, Vic Fecteau, who agreed to sell it.[2] Although his deposition and trial testimony were not entirely clear or consistent, Vic Fecteau acknowledged that he was reluctant to sell the demonstrator model out of concern that he could not replace it, that he did not want to "alarm" buyers about the situation, and that nothing in the agreement made the sale contingent on his obtaining a replacement demonstrator model. Thus, resolving all

---

[2] Mark McKinstry explained at trial that he believed floor models were generally of a higher quality than factory-ordered models, and that he "like[s] buying what I'm seeing."

doubts and inferences in favor of the nonmoving party, a fact-finder here could reasonably infer that seller agreed to the sale while harboring an unstated intention not to consummate it, but rather to persuade buyers at a later date to take a different, newly manufactured model.[3] Accordingly, we conclude that the evidence was sufficient to find a misrepresentation or omission of material fact.[4]

¶ 12. Turning to buyers' appeal, they contend the trial court abused its discretion by departing from factors utilized in determining the reasonableness of attorney's fees. Our review of the trial court's fee award is broadly deferential. "When determining an award of attorney's fees, the trial court must make a determination based on the specific facts of each case and, accordingly, we grant the trial court wide discretion in making that determination." L'Esperance v. Benware, 2003 VT 43, ¶ 21, 175 Vt. 292, 830 A.2d 675; accord Bonanno, 2014 VT 24, ¶ 23 ("Trial courts have ample discretion in determining the amount of attorney's fees to award, and we will not disturb the court's decision unless it has abused this discretion."); Parker, Lamb & Ankuda, P.C. v. Krupinsky, 146 Vt. 304, 307, 503 A.2d 531, 533 (1985) (observing that trial court enjoys "wide discretion in fixing the reasonable value of legal services" and its decision will not be disturbed "absent strong evidence of excessiveness or inadequacy" (quotation

---

[3] Seller's assertion that buyers effectively conceded that there was no misrepresentation is unsupported. Seller cites Mark McKinstry's deposition testimony that he thought Vic Fecteau did not go through with the sale because he became angry when McKinstry accused him of dishonesty, and that otherwise the sale would have gone through. McKinstry clarified at trial that he thought Fecteau would have gone through with the sale only if McKinstry had agreed to take the replacement model; McKinstry believed that Fecteau had "no intention" of selling the demonstrator model when he entered into the contract.

[4] At oral argument, seller raised the additional claim that the consumer-fraud action for damages was barred by buyers' election to accept the return of their refund. The record discloses that seller had raised the issue in a motion in limine before trial, and again in a pre-charge conference, but the court indicated that it was not persuaded and proceeded to instruct the jury on damages. Seller did not raise or brief the issue in their cross-appeal to this Court, and the claim was therefore waived. Gallipo v. City of Rutland, 2005 VT 83, ¶ 52, 178 Vt. 244, 882 A.2d 1177.

omitted)). The "touchstone" in every case "is reasonableness." Perez v. Travelers Ins., 2006 VT 123, ¶ 13, 181 Vt. 45, 915 A.2d 750.

¶ 13. Buyers assert in this regard that the trial court mischaracterized the $1000 damage award in this case as "nominal," and improperly considered whether the $69,000 in attorney's fees requested were "proportional" to the damages. See Kwon v. Eaton, 2010 VT 73, ¶ 20, 188 Vt. 623, 8 A.3d 1043 (mem.) ("The question . . . is not whether the attorney's fee award is proportional to the damages, but rather whether the fee award is reasonable given the demands of the case."). Buyers are correct that an award of attorney's fees is mandatory when the Consumer Protection Act has been violated, regardless of whether the award is "nominal," however that term is defined, and the court here recognized that to be the case. See L'Esperance, 2003 VT 43, ¶ 21 ("Where a court finds that the Consumer Fraud Act has been violated, it is not within the court's discretion to determine whether to award such fees, but rather its task is to determine what constitutes reasonable fees in each instance." (citation omitted)). The court may, however, properly consider "the results obtained in the litigation," id. ¶ 22, and its decision here, read as a whole, shows that it simply considered the result obtained by buyers in light of the sizable recovery—in excess of $69,000—which they had initially sought for emotional distress, compensatory damages, and punitive damages but did not obtain.

¶ 14. Buyers also contend the trial court erroneously cited the absence of any broader public purpose vindicated by the litigation. As the trial court noted, we have recognized that an award of attorney's fees may be appropriate, even in the absence of a damage award, where the plaintiff has "accomplished some broader 'public purpose' " by exposing, for example, lawless conduct or a "broader pattern of socially irresponsible behavior" or by "deter[ring] future misconduct." Anderson v. Johnson, 2011 VT 17, ¶¶ 11-12, 189 Vt. 603, 19 A.3d 86 (mem.). Contrary to buyers' claim, however, we do not read the trial court's decision here as improperly requiring a broader public purpose to justify an award of attorney's fees, but rather as

7

recognizing that the results obtained in the litigation—including any broader public interest—may be a proper consideration in determining the reasonableness of a fee award.

¶ 15. Buyers also maintain that, contrary to the court's finding, they accomplished a public benefit by exposing misconduct amounting to an unscrupulous "bait-and-switch" scheme by seller. The trial court was unpersuaded, citing no evidence that the case exposed "any broader pattern of socially irresponsible behavior," and we discern no basis to conclude that the court's finding was clearly erroneous or its reasoning untenable.

¶ 16. Finally, buyers contend the trial court abused its discretion by off-setting the $5000 deposit refunded by seller against the $15,000 in attorney's fees awarded to buyers. The court relied on the remedies section of the Consumer Protection Act, providing that a consumer who contracts for goods or services in reliance on false or fraudulent misrepresentations may recover "his or her damages, or the consideration or the value of the consideration given by the consumer." 9 V.S.A. § 2461(b). The court construed this provision to require an election of remedies under the Act—either an award of damages or a return of the consideration—and thus to compel the $5000 offset to prevent a double recovery.

¶ 17. Whatever its merits, we need not address the issue inasmuch as the trial court here was not confronted with a genuine election-of-remedies issue under the Act. Seller in this case opted to rescind the contract under a provision of the agreement providing that the "contract is valid for 30 days" and to return buyers' deposit. Buyers were not claiming that seller breached the contract, and were not seeking to recover their consideration in this action. The Consumer Protection Act does not purport to preempt any contractual remedies otherwise available to contracting parties separate from the Act, as occurred in this case when seller cancelled the agreement and returned the deposit. See Winey v. William E. Dailey, Inc., 161 Vt. 129, 136, 636 A.2d 744, 749 (1993) (emphasizing the distinct concerns and elements of claims for breach of contract and statutory consumer fraud breach). See also Will v. Mill Condo. Owners' Ass'n,

2006 VT 36, ¶ 7, 179 Vt. 500, 898 A.2d 1264 (remedy to set aside foreclosure of property for creditor's failure to conduct a commercially reasonable sale does not preclude additional damage remedy because the claims are based on distinct harms). See generally Auto Flat Car Crushers v. Hanover Ins. Co., 17 N.E.3d 1066, 1078 n.14 (Mass. 2014) (Massachusetts Consumer Protection Act claims and claims for breach of contract are distinct; consumer is not required to reject contract breach remedy to bring Consumer Protection Act claim); Agliori v. Metro. Life Ins. Co., 879 A.2d 315, 319 (Pa. Super. Ct. 2005) (Pennsylvania Consumer Protection Law is "meant to supplement—not to replace—common law remedies"); Ballagh v. Fauber Enters., Inc., 773 S.E.2d 366, 367 (Va. 2015) (Virginia Consumer Protection Act creates cause of action distinct from and in addition to common law fraud). To the extent that buyers were required to make an "election" of remedies for recovery under the Act—an issue we do not reach in this case—they elected to request compensatory and exemplary damages; there was no risk of a "double recovery" under the Act. The court charged the jury that buyers could recover only if the jury found that seller made a material misleading statement that caused harm to them. It went on to charge that buyers could recover damages for the amount of financial harm seller caused them by its act of consumer fraud. The return of the deposit had nothing to do with buyers' claim that seller violated the Act.

¶ 18. Accordingly, we find no basis for the $5000 set-off against attorney's fees ordered by the trial court. This portion of the attorney's fee award must, therefore, be reversed, and the judgment modified accordingly.

The $1000 damage award is affirmed. The attorney's fee award is modified to eliminate the $5000 set off, resulting in a total judgment of $17,360.

FOR THE COURT:

_____

Associate Justice

9