NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 17

No. 2013-067

| | |
|---|---|
| Debra Morisseau | Supreme Court |
| | |
| | On Appeal from |
| v. | Commissioner of Labor |
| | |
| Hannaford Brothers | October Term, 2015 |

Anne M. Noonan, Commissioner

Christopher McVeigh of McVeigh ♦ Skiff, Burlington, for Plaintiff-Appellant.

J. Justin Sluka of Ellis Boxer & Blake PLLC, Springfield, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **ROBINSON, J.**   Claimant appeals from a decision by the Commissioner of the Vermont Department of Labor awarding summary judgment to employer Hannaford Brothers on the question of whether the employer was obligated to pay for voice recognition technology, either as a vocational rehabilitation or medical benefit, as a consequence of her compensable work injury. We affirm.

¶ 2.    On appeal from an award of summary judgment, we review the record evidence in the light most favorable to the nonmoving party. Stone v. Town of Irasburg, 2014 VT 43, ¶ 25, 196 Vt. 356, 98 A.3d 769. That evidence, and the procedural history of this case, is as follows.

¶ 3.    In August 2009, claimant was working for employer as a baker. Concurrently, she was working as a personal care attendant at the Visiting Nurse Association. While working

for employer, claimant suffered a work-related injury to her right wrist, diagnosed as right wrist triangular fibrocartilage complex and ulnar nerve impingement. Despite both surgery and conservative treatment, claimant suffered a permanent impairment to her right wrist and has chronic pain and weakness in her hand, wrist, and upper extremity.

¶ 4. In January 2011, it was determined that claimant was entitled to vocational rehabilitation services, and in February 2011, she underwent a functional capacity evaluation, which determined that she was capable of full-time sedentary work. The evaluation found that with the correct ergonomic equipment, such as a split keyboard, claimant could tolerate frequent computer work, including up to thirty minutes of sustained typing per hour.

¶ 5. In June 2011, the parties submitted a Return to Work Plan to the Department, which was approved. The primary goal for the plan was for claimant to find work as a receptionist or clerk at a medical or dental office or as a customer service representative in other settings. Secondary goals included human services work with agencies providing assistance to people with disabilities—for example, as a community support worker. To accomplish these goals, the plan required employer to provide vocational exploration, work readiness training and placement assistance, concurrent short-term computer skills training, software, and an ergonomic keyboard and mouse to support home practice, and, upon claimant's securing work, an ergonomic evaluation to assure optimal work station set-up. The Return to Work Plan contemplated the possibility that additional assistive devices, such as voice recognition software, might be identified to enhance claimant's ability to locate suitable employment given her physical restrictions and limited experience in sedentary work.

¶ 6. In August 2011, claimant began work as a home support aide for developmentally disabled adults. The home support aide position was within a reasonable commuting distance from claimant's home and was largely unaffected by the ongoing symptoms in claimant's wrist. Claimant's vocational rehabilitation counselor's January 2012 written progress report reflected

2

that claimant was generally satisfied with her employment, particularly because of the opportunity it allowed her to manage her upper extremity symptoms by changing her activities.

¶ 7.    Claimant's hours, and thus pay, varied week to week.  At first, claimant's gross wages were below her pre-injury average weekly wage; however, claimant's paystubs reflected that her earnings from mid-February to mid-May 2012 met or exceeded her pre-injury average weekly wage.  As of May 2012, claimant had been employed with her current employer for at least sixty days.

¶ 8.    Claimant's treating physician has strongly recommended that she use voice activated software for all of her computer tasks and has opined that use of such software "will improve [her] productivity, help prevent pain flares and loss of function that can result in missed work, and improve her function overall."

¶ 9.    Claimant's vocational rehabilitation counselor supports claimant's use of voice recognition technology as a means of helping her with symptom control, expanding her workplace skills, and facilitating her return to full-time, suitable employment.  He took the position that claimant had not successfully returned to suitable full-time work because the security of her two part-time positions was "not firmly established."  One of her part-time employers, Howard Community Services, could offer her only part-time, direct-client work.  Her other part-time position caring for a disabled child is client-directed.  That is, the family she works for is her employer.  As a result, she has both limited job security and limited opportunity to advocate for increased hours because each family in the program is on a limited budget.  He further stated that claimant's position at Howard involves some computer data input, such that increasing her computer skills will help with that job and will also allow claimant to consider other positions at the agency.

¶ 10.   In July 2012, following an informal conference, the Department's vocational rehabilitation specialist approved employer's request to discontinue vocational rehabilitation

3

services on the ground that claimant had successfully returned to suitable employment, and denied claimant's request for voice recognition software on the ground that she had presented no evidence showing that the software was necessary and reasonable in order to perform the essential functions of her job. On claimant's request, the specialist forwarded the case to the formal hearing docket. In September 2012, employer moved for summary judgment.

¶ 11. In January 2013, the Commissioner awarded employer summary judgment with respect to the voice recognition software. Based on the record evidence, the Commissioner concluded that claimant had successfully returned to suitable, full-time employment for more than sixty days, that there was no evidence submitted as to the extent, if any, to which claimant's current job involves computer tasks, and that claimant was thus not entitled to the technology as a vocational rehabilitation benefit at this time.[1] The Commissioner also ruled that voice recognition software could not be a compensable medical benefit under 21 V.S.A. § 640(a). Claimant appealed to this Court.

¶ 12. We review summary judgment decisions de novo, using the same standard as the trial court or, as is the case here, the agency rendering the decision. Gauthier v. Keurig Green Mountain, Inc., 2015 VT 108, ¶ 14, __ Vt. __, __ A.3d __. Summary judgment is proper only where the material undisputed facts show that the moving party is entitled to judgment as a matter of law. Bonanno v. Verizon Bus. Network Sys., 2014 VT 24, ¶ 8, 196 Vt. 62, 93 A.3d 146; see V.R.C.P. 56(a). The nonmoving party is entitled to "all reasonable doubts and inferences." McKinstry v. Fecteau Residential Homes, Inc., 2015 VT 125, ¶ 10, __ Vt. __, __ A.3d __ (quotation omitted). In determining whether there is a genuine issue of material fact, "we will accept as true the allegations made in opposition to the motion . . . so long as they are

---

[1] The Commissioner expressly noted that it was possible that at some future point claimant might again become entitled to vocational rehabilitation services.

supported by affidavits or other evidentiary material." Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356, 848 A.2d 310.

## I. Vocational Rehabilitation Benefits

¶ 13. On appeal, claimant first argues that the Commissioner did not faithfully apply a summary judgment standard in concluding that claimant had successfully returned to suitable work. In light of claimant's vocational rehabilitation counselor's statements as to the fragility of claimant's current employment, she argues, the Commissioner failed to give claimant the benefit of all reasonable inferences in concluding as a matter of law that she had successfully returned to suitable work.

¶ 14. When, as a result of a work injury, an employee is unable to perform work for which the employee has previous training or experience, the employee is "entitled to vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore the employee to suitable employment." 21 V.S.A. § 641(a); see also Worker's Compensation Vocational Rehabilitation Rules, Rule 50, Code of Vt. Rules 24-010-012 [hereinafter WCVR] (describing purpose of vocational rehabilitation rules).

¶ 15. Once an injured worker has been found entitled to vocational rehabilitation services, those benefits may be suspended and/or terminated under specifically enumerated circumstances. See generally WCVR Rule 56.1000 (enumerating bases for terminating vocational rehabilitation services). One such circumstance is the "successful completion of an approved Return to Work Plan, documented by the claimant's successful return to suitable employment, not including any on-the-job training period, for at least 60 days." WCVR Rule 56.1110. A second ground for suspending or terminating vocational rehabilitation services is an employee's "return to suitable employment that is not contingent upon successful completion of the plan." WCVR Rule 56.1140.

¶ 16. Suitable employment is defined as follows:

5

51.2600 "Suitable Employment" means employment for which the employee has the necessary mental and physical capacities, knowledge, skills and abilities;

51.2601 Located where the employee customarily worked, or within reasonable commuting distance of the employee's residence;

51.2602 Which pays or would average on a year-round basis a suitable wage; and

51.2603 Which is regular full-time work. Temporary work is suitable if the employee's job at injury was temporary and it can be shown that the temporary job will duplicate his/her annual income from the job at injury.

WCVR Rules 51.2600–51.2603.

¶ 17. A "suitable wage," which is a prerequisite to suitable employment, means "a wage as close as possible to 100 percent of the pre-injury average weekly wage." WCVR Rule 51.2700.

¶ 18. Regular, full-time work "means a job, [that] at the time of hire was, or is currently expected to continue indefinitely." WCVR Rule 51.2100. The requirement that a job constitute regular, full-time work is a distinct requirement of suitable employment. That is, even if an injured worker works in an otherwise suitable job under a return-to-work plan for sixty days, pursuant to WCVR Rule 56.1110, or returns to otherwise suitable employment not contingent upon successful completion of a plan, WCVR Rule 56.1140, the employment is not suitable, and does not trigger either of the above-cited grounds for terminating vocational rehabilitation benefits, if it does not constitute regular, full-time work.

¶ 19. In this case, there is no dispute in the summary judgment record that claimant's current employment satisfies most of the elements of suitable employment. In particular, there is no dispute that claimant "has the necessary mental and physical capacities, knowledge, skills and abilities" to perform the work, WCVR Rule 51.2600; that the work is within "reasonable commuting distance" of claimant's residence, WCVR Rule 51.2601; and that claimant's wages

6

in the new positions constitute suitable wages, WCVR Rules 51.2602, 51.2700. The element with respect to which claimant argues the summary judgment record presents a genuine dispute is whether the employment constitutes regular, full-time work.

¶ 20. Reviewing this record, we conclude that employer made out a prima facie case that claimant's current jobs have no expected end date and are expected to continue indefinitely. See Clayton v. Unsworth, 2010 VT 84, ¶ 16, 188 Vt. 432, 8 A.3d 1066 (noting that moving party on motion for summary judgment has burden of production). The question is whether the opinion of claimant's vocational rehabilitation counselor that the security of claimant's two positions is "not firmly established" is sufficient to create a dispute of fact. See id. ("[T]he nonmoving party 'must come forward with an opposing affidavit or other evidence that raises a dispute as to the fact or facts in issue." (quoting Alpstetten Ass'n v. Kelly, 137 Vt. 508, 514, 408 A.2d 644, 647 (1979))).

¶ 21. We admit this is a close case. If the Commissioner had received all of the same evidence and resolved this case on the merits, the decision would have been more readily affirmable as within the Commissioner's factfinding discretion. The question whether, indulging all reasonable inferences in claimant's favor, we can say there is no dispute of material fact on this critical issue is a tougher one.

¶ 22. Nevertheless, we find that the letter from claimant's vocational rehabilitation counselor is insufficient to create a factual dispute. Although claimant's vocational rehabilitation counselor states that claimant's "job security and suitability" is not "firmly established," the counselor does not assert that her current employment is not expected to continue indefinitely, which is different from "permanently." He emphasizes that claimant's employment outside of Howard is client-directed, and opines that this limits her job security, but neither he nor claimant identifies any factors—such as a client who is planning to relocate or who will soon age out of the program—that pose a reasonably imminent threat to the continuity

7

of her employment. Nor does the claimant provide any statistical or anecdotal evidence of the local market for the kind of family support work she is performing in order to show that if claimant's work for the particular child she is currently serving were to terminate, she would be unlikely to find an alternative client relatively quickly. Instead, the letter from the vocational rehabilitation counselor relied upon by claimant to establish a dispute of facts contains only a general assertion that does not create a factual dispute sufficient to survive summary judgment. See In re Shenandoah LLC, 2011 VT 68, ¶ 17, 190 Vt. 149, 27 A.3d 1078 (dismissing plaintiff's argument that its affidavit supported judgment in its favor where documents provided merely conclusory facts); Starr Farm Beach Campowners Ass'n, Inc. v. Boylan, 174 Vt. 503, 506, 811 A.2d 155, 160 (2002) (mem.) (holding parties' affidavit containing "wholly conclusory" assertion that they relied on certain representations failed to raise triable issue on collateral estoppel claim "as it supplied no factual basis for the court to evaluate their claim of detrimental reliance"); Mello v. Cohen, 168 Vt. 639, 641, 724 A.2d 471, 474 (1998) (mem.) ("[T]o defend against a summary judgment motion, a plaintiff cannot rely on conclusory allegations or mere conjecture."). For these reasons, we affirm the Commissioner's conclusion that claimant had found suitable employment and was not entitled to voice recognition technology as a vocational rehabilitation benefit.[2]

## II. Medical Benefits

¶ 23. Claimant argues in the alternative that the Commissioner erred in granting summary judgment to employer regarding her claim that she was entitled to voice recognition software as a medical benefit under 21 V.S.A. § 640(a)—whether as a reasonable medical service or supply or as an assistive device.

---

[2] Claimant does not argue on appeal that the Commissioner erred in concluding that she had not presented any evidence from which the Commissioner might conclude that additional vocational rehabilitation services are necessary in order for her to continue to be successfully and suitably employed in her current positions, and we do not address that potential alternate basis for her request for voice recognition technology.

8

¶ 24. The Commissioner concluded, apparently as a matter of law, that voice-recognition software, while potentially helpful to claimant, cannot be considered to be a medical device. With respect to the statute that calls for provision of assistive devices in some cases, the Commissioner concluded as a matter of law that performing computer tasks "is not such a 'basic life function' as to trigger the coverage" relating to assistive devices.

¶ 25. The statute governing medical benefits offers only broad and general guidance. Under 21 V.S.A. § 640(a), an employer is required to provide an injured employee with "reasonable surgical, medical, and nursing services and supplies, including prescription drugs and durable medical equipment." In determining what constitutes a medical benefit, this Court has endorsed a "flexible approach" considering various factors. Close v. Superior Excavating Co., 166 Vt. 318, 322, 693 A.2d 729, 731 (1997). In Close, we affirmed the Commissioner's conclusion that round-the-clock care provided by the injured worker's wife in connection with his work injury was a compensable medical expense. Id. at 324, 694 A.2d at 733.

¶ 26. The statute further requires an employer to provide assistive devices and modifications to vehicles and homes for an injured worker who has a permanent disability that substantially and permanently limits the worker's ability to continue to live at home or perform basic life functions. 21 V.S.A. § 640(a).

¶ 27. We need not reach the question whether voice recognition technology may ever be available to a claimant as a medical benefit under either prong of the statute. The summary judgment record does not contain sufficient evidence to create a genuine dispute as to claimant's entitlement to the technology as a medical benefit in this case.

¶ 28. Claimant contends that the letter from her physician "strongly recommend[ing the] use of voice activated software for all her computer tasks" creates a material factual dispute. Claimant's physician explained that using the software will improve the patient's productivity, help prevent pain flares and loss of function that can result in missed work, and improve her

9

function overall. The letter does not provide information about the frequency and duration of claimant's daily computer use, its impact on her pain flares and function, whether she is at risk for deterioration in the condition of her wrist without the software, or how this technology would promote further healing from her work injury. Nor does it provide information supporting the inference that keyboarding is a basic life function in claimant's circumstances. For these reasons, even if we concluded that in the proper case a claimant may be entitled to voice recognition software as a medical benefit—a question we decline to reach—claimant here had the burden of providing sufficient evidence for a factfinder to conclude that it was a reasonably necessary medical expense. She has not met that burden, and we affirm the Commissioner's denial of voice recognition software to claimant as a medical benefit.

The Commissioner's determination regarding the two certified questions is affirmed.

FOR THE COURT:

_____

Associate Justice