Filed 12/06/23

VERMONT SUPERIOR COURT

Bennington Unit
207 South St
Bennington VT  05201
802-447-2700
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-02138

| John Carroll et al v. Silas Casey et al |
|---|

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment  (Motion: 4)
Filer:        James M. Dingley
Filed Date:   August 10, 2023

This case involves a land dispute between neighbors.  Plaintiffs John Carroll and Tracy Staton own property to the west of Defendants Silas Casey and Sonya Casey.  Plaintiffs purchased their property from the estate of Lois Rosencrantz in 2011, who had owned it with her husband for two generations.  Defendants purchased their property from the estate of Silas Casey's grandmother in 2022, who similarly had owned the land with her husband for many years.  As a part of their purchase, Defendants commissioned a survey of their property which ultimately gave rise to this dispute.  The survey indicated that Defendants' land extended further into Plaintiffs' property than Plaintiffs agree with.  This dispute centers around that 50-foot by 125-foot parcel of land in which Defendants now claim record title and Plaintiffs claim ownership by adverse possession that extends backwards approximately sixty years.  Defendants filed a motion for summary judgment against this claim of adverse possession and the associated trespass and nuisance claims.[1]  Plaintiffs oppose.

Defendants argue that Plaintiffs' claims lack sufficient evidence to reach a jury.  In particular, they dispute every element of adverse possession and advance three main arguments: that the affidavits and depositions of Plaintiffs' witnesses are not based on personal knowledge; a lack of evidence as to the existence and purpose of a stonewall and hedgerow between the properties; and that the Rosencrantzes' and Plaintiffs' activities on the disputed area do not rise to the level of open and notorious use necessary for adverse possession.  Defendants also challenge some of Plaintiffs' evidence as inadmissible.

In response, Plaintiffs argue that the Rosencrantzes completed their ownership by adverse possession many years ago, or if not, that tacking of time accounts for the required fifteen years of possession.  Plaintiffs argue their use and the Rosencrantzes' use of maintaining the disputed

---

[1] Plaintiffs have claims of Quiet Title, Statutory Timber Trespass, Common Law Trespass, and Nuisance which all rely on ownership established by their primary claim of Adverse Possession.  Defendants defend against all such claims because, in their view, Plaintiffs' Adverse Possession claim fails.  Defendants also seek summary judgment on their counterclaim of trespass, similarly reliant on failure of Plaintiffs' Adverse Possession claim.  Because the court cannot resolve the adverse possession claim on summary judgment, the court also cannot resolve the claims that depend on who has title to the disputed land.

property, allowing a hedgerow to grow, planting trees, playing on the property, and generally using the area for backyard activities meets the requirements of open and notorious. In briefing, they also assert ownership by acquiescence.

## DISCUSSION

### A. Standard for Adverse Possession

As a preliminary matter, Defendants and Plaintiffs dispute the standard to satisfy the burden of proving adverse possession. Defendants assert that the standard is "clear and convincing" while Plaintiffs assert it is "preponderance of the evidence."

Although the Vermont Supreme Court has not explicitly addressed the proper standard to meet the burden of proof for an adverse possession claim, it has implied that it is the preponderance standard unless the adverse possession claim is between family members. See *Harlow v. Miller*, 147 Vt. 480, 483–84 (1986) ("Where a family relationship between claimants is involved, proof of adverse possession must be established by stronger evidence than is required in other cases."); see also *Benson v. Lowe*, No. 2020-021, 2020 WL 3045993, at *3 (stating that the Vermont Supreme Court has not addressed whether the standard of proof for prescriptive easements is "clear and convincing."). Use of the preponderance standard is routine. See, e.g., *Laquerre v. Town of Woodbury*, No. 347-6-17 Wncv, 2018 WL 11358620 (Vt. Super. Ct. Feb. 23, 2018); *Parker v. Potter*, No. 107-5-12 Ancv, 2013 WL 5313421 (Vt. Super. Ct. June 04, 2013); *Adams Family Properties, Inc. v. Tomasi*, No. 539-9-06 Rdcv, 2009 WL 6551412 (Vt. Super. Ct. Nov. 23, 2009).

For these reasons, the court will apply the ordinary civil preponderance standard in this case.

### B. Procedural Standard for Summary Judgement

A motion for summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). Allegations of the nonmoving party, if supported by admissible evidence, are regarded as true when determining if a genuine issue of material fact exists. *Morisseau v. Hannaford Bros.*, 2016 VT 17, ¶ 12, 201 Vt. 313. The benefit of reasonable doubts and inferences goes to the nonmoving party. *Id.* The procedures of Rule 56 should be construed liberally in favor of resolving disputes on the merits. *Stone v. Town of Irasburg*, 2014 VT 43, ¶ 57, 196 Vt. 356.

A moving party has the burden of proving there are no disputed issues of material fact that exist. *Fitzgerald v. Congleton*, 155 Vt. 283, 294 (1990). When a moving party is a defendant, i.e., the moving party does not bear the burden of persuasion at trial, the defendant may satisfy their burden of production by showing the court there is an absence of evidence to support the plaintiff's case. *Boyd*, 2022 VT 12, ¶ 19. The burden then shifts to the plaintiff to show there are material facts in dispute. *Id.* The evidence brought forward by the plaintiff must be more than "mere conjecture, surmise or suspicion" as that is an insufficient foundation for a

verdict. *Id.* (quoting *Fuller v. City of Rutland*, 122 Vt. 284, 289 (1961)). A plaintiff defeats a motion for summary judgment if they respond with specific facts raising triable issues and they demonstrate sufficient evidence to support a prima facie case. *State v. G.S. Blodgett Co.*, 163 VT 175, 180 (1995).

## C. Elements of Adverse Possession

The elements of adverse possession are that the use of the land was (1) open, (2) notorious, (3) hostile, (4) continuous, and (5) for the statutory period of fifteen years. *First Congregational Church of Enosburg v. Manley*, 2008 VT 9, ¶ 13, 183 Vt. 574. Open and notorious acts are those conducted in a manner which are so notorious they would put an average owner on notice of the adverse possessor's claim to absolute dominion of the property. *Old Railroad Bed, LLC v. Marcus*, 2014 VT 23, ¶ 24, 196 Vt. 74. Hostility does not require ill will, but that the adverse possessor intends to claim the land and treat it as his or her own. *Id.* Continuous use does not mean constant use; it means that the adverse possessor is using the land in the same way an average owner would, taking into account its nature and condition. *Adams Family Properties v. Tomasi*, No. 2009-480, 2010 WL 7791795, at *2, (Vt. Aug. 18, 2010) (unpublished mem.); see also *Jarvis v. Gillespie*, 155 Vt. 633, 639 (1991). Stated in other words, the elements of adverse possession are met when an adverse possessor "unfurl[s] his flag on the land, and keep[s] it flying so that the owner may see … the enemy has invaded his dominions and planted his standard of conquest." *Old Railroad Bed, LLC*, 2014 VT 23, ¶ 24 (quoting *Moran v. Byrne*, 149 Vt. 353, 355 (1988) (internal quotations omitted)).

The statutory timeframe required for adverse possession may be based on the doctrine of "tacking." *Laird Properties New England Land Syndicate v. Mad River Corp.*, 131 Vt. 268, 277 (1973). The doctrine allows an adverse possessor to add their period of possession to that of a prior adverse possessor to establish continuous possession for the statutory period. *Id.*

## D. Lack of Personal Knowledge of Affiant and Deponent

Allegations made in opposition to a motion for summary judgment are accepted as true, so long as they are supported by affidavits or other evidence. *Gates v. Mack Molding Comp., Inc.* 2022 VT 24, ¶ 13, 216 Vt. 379. Affidavits are not excluded simply because they conflict with a deposition. *Pierce v. Riggs*, 149 Vt. 136, 139 (1987). They must be made on personal knowledge. V.R.C.P. 56(c)(4); *Gates*, 2022 VT 24, ¶ 36. Affidavits should not be conclusory, but instead provide enough details for a court to independently draw conclusions. See *State v. Melchoior*, 172 Vt. 248, 250–51 (2001).

Defendants argue that Ms. Pratt's affidavit is not based on personal knowledge because she moved out of her parents' house around 1968, creating a gap in knowledge of the fifteen-year time for adverse possession. Personal knowledge of boundaries and land use does not require an affiant or deponent to be living on the property. Instead, knowledge through visits is sufficient to establish personal knowledge. Ms. Pratt states she visited her parents routinely when she was not living there. See Exhibit I, Pratt Dep. at 42. Additionally, her deposition demonstrates personal knowledge of her mother's statements that she let trees and bushes grow

for privacy and her brother's statements regarding the sale of the property. Exhibit I, Pratt Dep. at 86–87.

As to the statutory timeframe argument that underlies the personal knowledge issue, both Ms. Harkins and Ms. Pratt have stated that the property lines, as demonstrated by the tax map or aerial photograph, and the stone walls were "always recognized" by their family. See Exhibit I, Pratt Dep. at 24 ("The stone wall in Exhibits 1, 2, and 3 were there when my parents owned the property, and it was always understood to be the property line between the Rosencrantz and neighbor Janet Casey. The stone wall has been there since at least 1948." (quoting the Pratt Affidavit)); Exhibit 18, Harkins Aff. ("I remember the Western, Northern, and Eastern stone walls/mounds having always been there …. My family always recognized the stone wall or mounds as our … property line boundaries."). Since Ms. Harkins and Ms. Pratt have personal knowledge of their parents' use of the property, their statements may be relied upon to establish the fifteen-year timeframe duration of the adverse possession.

### E. Stone Wall and Hedgerow

Defendants argue that there is an absence of evidence relating to whether the prior landowners intended to claim the disputed property as their own for open, notorious, continuous, and hostile use. Defendants argue either that the stone wall and hedgerow do not exist or if they do exist, they were built for purposes other than to mark the boundary line of the properties and keep others out.

#### i. *Existence of Stone Wall or Hedgerow*

Ms. Pratt states in her deposition that there was a stone wall on the eastern border of her parents' property that separated their land from the Casey land. Exhibit I, Pratt Dep. at 29–30. She states that her father started to rebuild the wall on the "left," presumably west, and "back" side of their property and it took many years. *Id.* at 30. She stated that the stone walls "were always there" and that her father was only rebuilding them, not newly erecting them. *Id.* Ms. Pratt does state she does not see the stone wall in the photograph shown to her in Exhibit 5, only some things that "could be stones." *Id.* at 37. Ms. Harkins' affidavit also states that the stone wall or mound existed at the eastern border in question and that it was treated as the property boundary by her family. Exhibit 18, Harkins Aff. at 2. Ms. Harkins further states that trees grew overtop the stones. *Id.* Ms. Pratt's deposition testimony and Ms. Harkins' affidavit establish that there is a genuine dispute of a material fact regarding the elements of "open," "notorious," and "continuous." Any dispute about whether stones are visible in a picture is simply a matter of weight of the evidence.

Similarly, Defendants argue that the brush and trees that have grown in the area are not a hedgerow, but instead they are just a natural thicket in the area. Reply at 4–5. This is also an issue of determining both existence and intent. Ms. Pratt's deposition states that the area when she was a child was a "field." Exhibit I, Pratt Dep. at 46–48. At some point between when Ms. Pratt was a child and today an area of trees and brush was grown. See *Id.* at 87. Therefore, there is a genuine dispute of material fact about the existence of this thicket or hedgerow. This also may have been an obvious sign of possession, particularly because there is evidence that the

Rosencrantzes, and subsequently Plaintiffs, were mowing on the western side of the thicket and had once rototilled the area, but then let the thicket grow. See *id.* at 84.

### ii. Intent of Stone Wall and Hedgerow

Courts should exercise caution in granting motions for summary judgment when intent is a dispositive issue. *Stamp Tech, Inc. ex rel Blair v. Ludall/Thermal Acoustical, Inc.* 2009 VT 91, ¶ 31, 186 Vt. 369. Intent must often be inferred from a party's actions. *Id.* Caution in granting summary judgment is particularly appropriate when intent is susceptible to competing inferences. *Id.*

Ms. Pratt's deposition and Ms. Harkin's affidavit create a genuine dispute of material fact as to whether the stone wall and hedgerow were intended to exclude others and claim the land for the Rosencrantzes. Their statements are circumstantial evidence of the intent of the builder of these barriers. That the stone wall or hedgerow existed at or near the claimed property line alone may be evidence of the intent of the builder or grower. Even if Ms. Pratt thinks the intent of her father in rebuilding the stone walls was out of "boredom," there may be a dual intent, or the intent may be found to be different than what Ms. Pratt thinks based on other circumstantial evidence. And Ms. Pratt stated that her father had rototilled the bushes at one point and then allowed the bushes to grow because her mother wanted more privacy. Exhibit I, Pratt Dep. at 84, 87. These statements create a genuine dispute regarding the "hostile" element necessary to establish adverse possession.

## F. Type and Character of Property Use

### i. Open and Notorious Use

Defendants argue that the use the Rosencrantzes and Plaintiffs made of the property was not sufficient to put a record owner on notice of the claim of dominion. They argue that removing vines and brush, mowing, planting a few trees, and cutting through the area on ski trips is not clear, unequivocal, and definite notice.

Open and notorious use are elements of adverse possession. *First Congregational Church of Enosburg*, 2008 VT 9, ¶ 15–16. Mowing grass or maintaining a yard in a disputed area, alone, is not sufficient to establish adverse possession. *Id.* However, lawn-mowing may be a part of open and notorious use if combined with other facts. *Id.* In particular, mowing, planting, and making a border may be sufficient evidence of adverse possession. See *id.* (citing *Collins v. Cabral*, 348 Mass. 797, 206 N.E.2d 84, 85 (1995)).

Use of the property to establish adverse possession is very fact-specific as illustrated by two Vermont Supreme Court cases; *Jarvis v. Gillespie*, 155 Vt. at 640–41; and *Deyrup v. Schmitt*, 132 Vt. 423, 423–24 (1974). In the first case, using a property for grazing, cutting hay, planting trees, and harvesting trees was sufficient to put an average owner on notice of a claim of adverse possession. *Jarvis*, 155 Vt. at 639. In the second case, although the adverse possessors had children playing on the property, planted a garden, and used it for boat-trailer parking during

seasonal use, the Court reasoned it didn't amount to adverse possession because there were no permanent signs that the seasonal owner was aware of. *Deyrup*, 132 Vt. at 427.

Here, there is more than just mowing grass and maintaining the property. The property maintenance is combined with the potential physical barriers of a stone wall and hedgerow. It is also combined with rototilling and planting and harvesting trees. Exhibit I, Pratt Dep. at 47, 66–68. Ms. Pratt's deposition states they did other activities like making a garden, hanging laundry and playing as well. It is not clear exactly what Ms. Pratt meant by "the land" but inferences are drawn in favor of the non-moving party, and here the court infers that Ms. Pratt meant at least some of these activities were done in the disputed area. Like in *Jarvis*, where activities suited to the land were held to amount to adverse possession, here similarly the activities of Plaintiffs and the Rosencrantzes were suited to the backyard-nature of this land. Further, unlike in *Deyrup*, where the record title owner had no opportunity to observe the sporadic activities, here the Caseys and their predecessors lived on their land and would have the opportunity to observe the activities. Open and notorious use is genuinely disputed.

The court notes a dispute over a page-wire fence. The court is unable to determine the location where the page-wire fence existed based on the Molloy deposition, but the parties seem to agree that it existed in the disputed area and was removed by Mr. Rosencrantz. See Exhibit J, Molloy Dep. at 10. Defendants correctly note that a "fence of convenience" used to contain animals does not necessarily reflect the property line. See *Old Railroad Bed, LLC*, 2014 VT 23, ¶ 25. However, Defendants mistake the significance, because here it is alleged that Mr. Rosencrantz *removed* a fence from what Defendants claim as their property. A person removing a fixture from property may represent an act of ownership and an open exercise of dominion over that area. This evidence also demonstrates a genuine dispute regarding whether there was open and notorious use of the disputed land by Plaintiffs and their predecessors.

### ii. Continuous Use and Exclusion

Adverse possession can only be obtained through continuous use of the property for the requisite time. Additionally, this element must reflect an "exclusive" possession of the property. See *Schonbek v. Chase*, 2010 VT 91, ¶ 8, 189 Vt. 79. Use of land by its record title owner disrupts the continuity of adverse possession. *MacDonough-Webster Lodge No. 26 v. Wells*, 2003 VT 70, ¶ 24, 175 Vt. 382. Defendants argue that Plaintiffs and the Rosencrantzes did not "exclude" others from the property.

Plaintiffs' evidence suggests that they and the Rosencrantzes continually used the property. In particular, the mowing and landscaping use was on a routine basis as it otherwise would be quickly overgrown. See Exhibit I, Pratt Dep. at 48 ("Mowed and kept it clear so that it didn't get overgrown with forest. If you don't mow a field, it's taken over by nature. So he kept the field clear."). The evidence as to routine landscaping and use creates a genuine dispute of material fact as to whether there was continuous use of the disputed area.

The evidence also suggests that Plaintiffs and the Rosencrantzes were the only parties that used the disputed property. See e.g. Pratt Aff. at ¶ 12. There is no need to verbally or

physically exclude anyone from the property if the record title owner did not attempt to use the disputed area. The "split rail" fence that borders the Casey property but ends before the disputed area may suggest that Defendants and their predecessors never used the disputed area, at least until recently. See Carroll Aff. at ¶ 11; Exhibit I, Pratt Dep. at 79; Staton Aff. at ¶¶ 11, 14. Exclusivity of use is genuinely disputed.

### G. Acquiescence[2]

A boundary by acquiescence is established when there is "'mutual recognition of a given line by the adjoining owners, and such actual continuous possession by one or both to the line' for the statutory period required to establish ownership by adverse possession." *Lakeview Farm, Inc. v. Enman*, 166 t. 158, 162 (1997) (quoting *D'Orazio v. Pashby*, 102 Vt. 480, 487 (1930)). Knowledge of the boundary line and mutual recognition of it are required. *Id.*

Defendants argue that there was not clear and definite knowledge and recognition of the boundary line. Defendants' argument relies primarily on *Heath v. Dudley*, 148 Vt. 145, 148 (1987). In that case, mutual logging on each side of a boundary line was not found to be sufficient evidence of acquiescence because "nobody cared" about the boundary line at the time. *Id.* at 149.

Here, there is sufficient evidence of knowledge and mutual recognition of the stone wall and hedgerow area as the boundary line to create a genuine dispute of material fact. There is more disputed evidence than simply whether the property was mowed and maintained to the line. As stated above, the Caseys built a fence that stopped at this boundary line. Additionally, whether the Caseys or Rosencrantzes cared about the property line is a question of their state of mind. Although Ms. Pratt claimed that no one cared about the boundary lines, see Exhibit I, Pratt Dep. at 57, this characterization is disputed by Mr. Molloy who said the parties acted in a "good old boy" fashion where they "stood beside each other and talked and decided." Exhibit J, Molloy Dep. at 14–15. The fence along the Molloy and subsequently Casey property line and Ms. Rosencrantz's complaint about privacy from a shed being built at the property line also support the inference that the parties cared about the property line. See Exhibit J, Molloy Dep. at 12; Exhibit I, Pratt Dep. at 67. On this record, determining these state-of-mind issues cannot be done as a matter of law. There is a genuine dispute as to acquiescence.

### H. Admissibility of Evidence

Defendants argue that some of Plaintiffs' evidence is inadmissible: that a tax map cannot be considered as evidence of a boundary line; that Mr. Molloy, a long-time neighbor and landowner, is giving an inadmissible lay opinion; and that Plaintiffs' surveyor is only opining on a legal conclusion of adverse possession.

First, the tax map, in relation to this motion for summary judgment, has been used only for demonstrative evidence to illustrate and orient Ms. Pratt, Ms. Harkins, and Mr. Malloy in

---

[2] Defendants object that Plaintiffs' acquiescence claim should have been expressly asserted in the complaint. However, they responded to the summary judgment argument in substance, and the court does the same.

their depositions and affidavits. Demonstrative evidence is distinguishable from "real" evidence in that demonstrative evidence has no direct part in the incident at issue, but instead acts as a model or explanatory aid. It thus has not been used to establish the boundary as Defendants argue.

Second, Defendants argue that Mr. Molloy's belief about the property line is an inadmissible lay opinion under V.R.E. 701. Defendants reason that Mr. Malloy stated in his deposition that he never knew where the property line was, and therefore Defendants argue he cannot opine on a subject about which he has no personal knowledge. Vermont Rule of Evidence 701 allows lay opinions or inference "which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge."

Here, Mr. Molloy does state, "I can't tell 'cause I never knew," in response to a question about the boundary line on a map. Exhibit J, Molly Dep. at 41. He appears to be declining to express an opinion on that topic, but at other times he states the property line was assumed to be the location of a fence. *Id.* at 42. The court concludes that Mr. Molloy has a memory and perception of the area of the property line and can make a rationally based opinion on the subject. His perceptions, memory, and slightly contradictory statements are a matter of credibility which goes towards the weight of his statements not their admissibility.

Third, Defendants argue the affidavit of expert witness R. Brownson Spencer II is inadmissible because he draws impermissible legal conclusions about whether the elements of adverse possession are met. This issue is moot because the court has not relied on this testimony.

## I. Other Claims

Because there are genuine disputes of material fact regarding adverse possession, the court cannot rule as a matter of law on the parties' other claims, all of which depend on who has title to the disputed land.

## ORDER

For the foregoing reasons, Defendants' motion for summary judgment is denied.

**Signed electronically December 5, 2023 pursuant to V.R.E.F 9(d).**

**David Barra**
**Superior Court Judge**